**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
pelton@peltonlaw.com
Taylor B. Graham (TG 9607)
graham@peltonlaw.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltonlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DONALD LITTLE and TERRENCE JOHNSON, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**CARLO LIZZA & SONS PAVING, INC., SHIPS POINT INDUSTRIES LTD., A&B CONTRACTORS LLC and ELIA ALY LIZZA, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Donald Little and Terrence Johnson (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.      Plaintiffs are former safety flagmen who worked for Defendants on New York City roadways, pursuant to contracts with the New York City Department of Transportation (the "DOT Contracts"). For their work, Plaintiffs were either not paid wages of any kind for hours worked in excess of forty (40) per week or paid at straight-time rates for all hours worked, and were also not paid the prevailing rate of wages or supplemental benefits for their work on public works project including New York City roadways.

2.      Plaintiffs bring this action to recover unpaid overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*.

3.      Plaintiffs also seek to recover unpaid prevailing wages, daily overtime and supplemental benefits which they and the members of the putative Class were entitled to receive for work, including weekend and evening work, they performed pursuant to contracts entered into between Defendants and public entities, including but not limited to, the New York City Department of Transportation.

4.      Plaintiffs also bring this action for Defendants' failure to provide proper wage notices and wage statements pursuant to the NYLL and the supporting regulations.

5.      Plaintiffs bring their FLSA claim on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all employees of Defendants working as safety flagpersons and other construction laborers.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

8.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

9.     Plaintiff Donald Little ("Little") was, at all relevant times, an adult individual residing in New York County, New York.

10.     Plaintiff Terrence Johnson ("Johnson") was, at all relevant times, an adult individual residing in New York County, New York and Bronx County, New York.

11.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

12.     Upon information and belief, Defendant Carlo Lizza & Sons Paving, Inc. ("Carlo Lizza Paving") is an active New York corporation with headquarters located at 200 Winding Road, Old Bethpage, NY 11804.

13.     Upon information and belief, Defendant A&B Contractors LLC ("A&B") is an active New York Limited Liability with headquarters located at 1617 Carrie Street, Schenectady,

New York 12308.

14.     Upon information and belief, Defendant Ships Point Industries Ltd. ("Ships Point Industries" and, collectively with Carlo Lizza Paving and A&B, the "Corporate Defendants") is an active New York Limited Company with headquarters located at 64 Ships Point Lane, Oyster Bay, New York 11771.

15.     At all relevant times, the Corporate Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

16.     Upon information and belief, at all relevant times, the Corporate Defendants had gross revenues in excess of $500,000.00.

17.     Defendant Elia Aly Lizza ("Lizza") is listed as the Chief Executive Officer of Carlo Lizza Paving and Ships Point Industries in corporate filings with the New York Department of State, Division of Corporations.

18.     Upon information and belief, Defendant Lizza is an owner and operator of Carlo Lizza Paving and Ships Point Industries who sets the companies' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, Lizza was in charge of determining the companies' policies with respect to payroll and otherwise running the business of Carlo Lizza Paving and Ships Point Industries.

19.     At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each Collective and Class Action Member within the meaning of the FLSA, 29 U.S.C. § 203(d).

20.     The Individual Defendant participated in the day-to-day operations of Carlo Lizza Paving and Ships Point Industries and acted intentionally and maliciously in his direction and

control of Plaintiffs and Carlo Lizza Paving and Ships Point Industries' other similarly situated employees, and is an "employer" pursuant to the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

21.     All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

## COLLECTIVE ACTION ALLEGATIONS

22.     Pursuant to 29 U.S.C. § 207, Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since September 18, 2012 and through the entry of judgment in this case (the "Collective Action Period") who worked as safety flagpersons and other construction laborers (the "Collective Action Members").

23.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action members are similarly situated, in that they were all subjected to Defendants' illegal policies, including but not limited to, failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

24.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## CLASS ACTION ALLEGATIONS

25.     Pursuant to the NYLL and the New York common law, Plaintiffs bring their Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since September 18, 2009 and through the entry of judgment in this case (the "Class Period") who worked as safety flagpersons and other construction laborers (the "Class Members").

26.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

27.     The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

28.     Upon information and belief, there are in excess of forty (40) Class Members.

29.     Common questions of law and fact exist as to all Class Members and such questions predominate over any questions solely affecting individual Class Members. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.  whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.  whether Defendants failed to pay overtime wages to Plaintiffs and the Class Members

6

for all hours worked over forty (40) in a given week;

d.  whether Defendants breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;

e.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day;

f.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members supplemental benefits on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules;

g.  whether Defendants were unjustly enriched by failing to pay Plaintiffs and the Class Members at prevailing wage rates on prevailing wage jobs;

h.  whether Defendants failed to provide Plaintiffs and the Class Members with proper wage notices and wage statements;

i.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

j.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

30.     Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, are construction employees who worked for Defendants pursuant to their

7

corporate policies. The Class Representatives, like all Class Members, were, *inter alia*, not paid overtime wages for all hours worked over forty (40) in a given workweek; not paid prevailing wages, supplemental benefits or daily/weekly overtime prevailing wages for work performed on New York City roadways; were not reimbursed for the purchase of certain necessary clothing items and protective gear; and were not provided with proper wage notice and wage statements. If Defendant is liable to the Class Representatives for the Class claims enumerated in this Complaint, they are also liable to all Class Members.

31.     The Class Representatives and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and the Class Representatives bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

32.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

33.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the Corporate Defendant. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF THE FACTS

**A.    Defendants' Companies**

34.    At all relevant times, Defendants Carlo Lizza Paving and Ships Point Industries have been in the asphalt and paving contracting business. Upon information and belief, Carlo Lizza Paving transferred all of its employees and business operations to Ships Point Industries in or around the summer of 2015. While Carlo Lizza Paving remains an active New York Corporation, Ships Point Industries has, upon information and belief, taken over the business of Carlo Lizza Paving, and has continued the operations in the same manner complained of herein.

35.    At all relevant times, Defendant A&B has been in the construction contracting business. Upon information and belief, Carlo Lizza Paving subcontracted with A&B to provide safety flagmen on New York City roadways starting in or around the spring of 2014.

36.    Upon information and belief, A&B and/or Carlo Lizza Paving entered into contracts as prime and/or sub-contractors that required Plaintiffs and the Class Members to be paid prevailing wages for work performed on New York City roadways.

37.    Upon information and belief, Kelvin Quick, the leader of a workforce coalition which staffed Carlo Lizza Paving with many of the flagpersons, and Quick's partner, Aaron Van Dyke, are co-owners of Defendant A&B.

38.    Upon information and belief, A&B is an exclusive subcontractor for Carlo Lizza Paving and Ships Point Industries.

**B.**     **The Public Works Contracts**

39.     Upon information and belief, Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with public agencies to provide flagging and other construction work on New York City roadways, or with prime contractors not currently known, to furnish labor, material and equipment to perform work on New York City roadways (the "Public Works Contracts").

40.     Upon information and belief, the Public Works Contracts obligated Defendants to pay Plaintiffs and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening. Defendants' failure to pay Plaintiffs proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

41.     As employees of Defendants who were assigned to work on Defendants' publicly-financed projects, Plaintiffs and the Class Members were intended third-party beneficiaries of Defendants' Public Works Contracts.

42.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to the plaintiff Class should have been annexed to and formed a part of the Public Works Contracts. If not annexed to the Public Works Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

43.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Public Works Contracts was made for the benefit of all workers

furnishing labor on New York City roadways and, as such, the workers furnishing labor on New York City roadways are the beneficiaries of that promise and the contracts entered into between Defendants and government agencies.

44.     Upon information and belief, in furtherance of the Public Works Contracts entered into by Defendants, Plaintiffs and other members of the putative Class performed various flagging tasks, including, but not limited to, bolting and connecting beams to form building structures, welding and installing beams to form building floors.

45.     Upon information and belief, Plaintiffs should have been paid at the prevailing rate of wages (including supplemental benefits) of:

    a.  July 1, 2010 through June 30, 2011:  $37.71 plus $28.70 in supplemental benefits per hour;[1]

    b.  July 1, 2011 through June 30, 2012:  $38.84 plus $28.70 in supplemental benefits per hour;

    c.  July 1, 2012 through June 30, 2013:  $38.99 plus $32.15 in supplemental benefits per hour;

    d.  July 1, 2013 through June 30, 2014:  $39.67 plus $33.55 in supplemental benefits per hour;

    e.  July 1, 2014 through June 30, 2015:  $40.32 plus $35.15 in supplemental benefits per hour;

    f.  July 1, 2015 through June 30, 2016:  $40.98 plus $36.92 in supplemental benefits per hour;

---

[1] The rates listed below are those of a "Paver & Roadbuilder - Laborer" from the Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules.

**C. Plaintiffs' Work for Defendants**

46.     At all relevant times, Plaintiffs performed safety flagging services for Defendants in New York City.

47.     **<u>Plaintiff Little</u>** worked for Defendants as a safety flagman on New York City roadways from in or around May 2012 through in or around May 2014 and again from in or around March 2015 through in or around August 7, 2015 (the "Little Employment Period").

48.     Due to the seasonal nature of his work, Little typically did not work December, January and February of each year.

49.     Plaintiff Little's duties included setting up orange barrels around the areas in which milling work was being performed, steering all traffic through detours, and sweeping the ground to ensure that pedestrians walked on a smooth surface.

50.     From in or around May 2012 through in or around November or December 2013, Plaintiff Little worked approximately twelve (12) hours per day five (5) days per week, Monday to Friday, for a total of approximately fifty-five to sixty (55-60) hours per week. Although he was scheduled to work from 8:00 pm to 4:00 am for work done in Manhattan and 7:00 am to 3:30 pm for work done in the Bronx, Brooklyn, and Queens, Plaintiff Little was required to stay on the job site until the work was finished. From in or around November or December 2013 through in or around March 2014, Plaintiff Little typically worked eight to ten (8-10) hours per day five (5) days per week for a total of approximately forty-eight to fifty (48-50) hours per week. For a period of approximately two (2) months in March and April 2014, Plaintiff Little typically worked eight (8) hours per day, five (5) days per week, for a total of approximately forty (40) hours per week. In approximately May or June 2014, Plaintiff Little left the company briefly and returned in or around March 2015. From in or around March 2015 through in or

12

around July 2015, Plaintiff Little typically worked a night shift in Manhattan from 8:00 pm to 4:00 am followed by a day shift in Queens from approximately 7:00 am to between 3:30 pm and 5:00 pm, plus two (2) or three (3) additional single shifts if he was able to join another crew, for a total of approximately forty-eight to fifty-six (48-56) hours per week. From in or around July 2015 through the end of the Little Employment Period, Plaintiff Little worked eight (8) hours per day five (5) days per week for a total of approximately forty (40) hours per week.

51.     From the start of the Little Employment Period to in or around March 2015, Plaintiff Little received thirty dollars ($30.00) per hour plus thirty-two dollars ($32.00) per hour for a health annuity. In approximately March 2015, Plaintiff Little and Carlo Lizza Paving's other safety flagmen were subcontracted to Defendant A&B. From in or around March 2015 through the end of the Little Employment Period, Plaintiff Little was paid twenty dollars ($20.00) per hour with no health annuity. On one occasion, Plaintiff Little received a check for fifteen dollars ($15.00) per hour. Throughout the Little Employment Period, Plaintiff Little did not receive correct supplemental benefits for his work on New York City roadways, nor was he paid the prevailing wage in effect at that time.

52.     For approximately twenty-five (25) days in the fall of 2013, Plaintiff Little performed flagging work on First Avenue from 79th Street to 125th Street (the "First Avenue Project"). Although he typically worked approximately forty-five (45) hours per week on the First Avenue Project, including five (5) hours of nighttime work, pursuant to a special contract with the City, he was only paid for thirty-two (32) hours at his regular hourly rate of thirty dollars ($30.00) per hour and four (4) hours of overtime based on his regular hourly rate. When he complained to Defendant Lizza that he was not being paid pursuant to the city contract, Lizza responded by telling him that he "shouldn't be complaining" because the company was paying

13

him thirty-two dollars ($32.00) per hour for his health annuity.

53.     From in or around the beginning of the Little Employment Period to in or around March 2015, Plaintiff Little was paid for eight (8) hours of work per day, regardless of the number of hours that he actually worked. He did not receive wages of any kind for hours worked in excess of forty (40) per week. From in or around March 2015 through the end of the Little Employment Period, Plaintiff Little received his regular hourly rate for all hours worked, including hours worked in excess of forty (40) hours per week. Throughout his employment period, Little typically did not receive overtime premiums of one and one-half (1.5) times his hourly rate for hours worked in excess of forty (40) hours per week.

54.     Throughout the Little Employment Period, Plaintiff Little received his wages entirely in check. From in or around March 2015 through the end of the Little Employment Period, Plaintiff Little occasionally received two (2) checks each week from Defendant A&B, one for forty (40) hours of work and one for hours worked in excess of forty (40) during the same work week.

55.     On several occasions, Plaintiff Little complained to Defendant Lizza that he was not receiving proper overtime pay or prevailing wages. Lizza would typically respond by telling Little that "[Little's] guy made a deal with my guy," referencing an alleged deal between former workforce coalition head Jesus Torres and Defendant Lizza to pay safety flagmen thirty dollars ($30.00) per hour plus a thirty-two dollar ($32.00) health annuity.

56.     On several occasions in 2015, Plaintiff Little complained to Quick and Van Dyke that he was not receiving proper overtime pay or prevailing wages. Quick and Van Dyke responded by telling Plaintiff Little that he could "find another job."

57.     Upon information and belief, Defendant Lizza paid Defendant A&B thirty dollars

14

($30.00) per safety flagman subcontracted out from Carlo Lizza Paving. On at least one occasion, when Plaintiff Little complained to Quick and Van Dyke that his pay had dropped to twenty dollars ($20.00) per hour, they informed him that they "were only getting thirty dollars ($30.00) per man from Lizza" and couldn't afford to pay him the full thirty dollars ($30.00) per hour.

58.     Throughout the Little Employment Period, Plaintiff Little was rarely, if ever, able to take a thirty (30) minute uninterrupted break because he was not permitted to leave his flagging post.

59.     Defendants kept track of the hours the Plaintiff Little worked by requiring Plaintiff Little to record his arrival and departure times on a sign-in sheet maintained by the assistant foreman. Although Plaintiff Little typically accurately recorded their hours on the sign-in sheet, he was not properly compensated for all hours that he worked.

60.     **Plaintiff Johnson** worked for Carlo Lizza Paving as a safety flagman on New York City roadways from in or around March 2011 through in or around the spring of 2013 (the "Johnson Employment Period").

61.     Due to the seasonal nature of his work, he typically did not work in December, January and February of each year.

62.     Plaintiff Johnson's duties included closing off city blocks with barrels, walking alongside machines on city streets to ensure that they moved safely from one side of the street to the other, directing traffic and ensuring safe crossing for pedestrians.

63.     Throughout the Johnson Employment Period, Plaintiff Johnson typically worked eight to twelve (8-12) hours per day five (5) days per week from Monday through Friday, for a total of approximately forty-five to fifty (45-50) hours per week. Plaintiff Johnson typically

15

worked from 7:00 am to between 3:30 pm and 5:00 pm when he worked a day shift and from 7:00 pm to between 7:00 am and 9:00 am, and sometimes as late as 10:00 am, when he worked a night shift.

64.     For his work, Plaintiff Johnson was paid thirty dollars ($30.00) per hour. Plaintiff Johnson did not receive correct supplemental benefits for his work on New York City roadways, nor was he paid the prevailing wage in effect at that time.

65.     Throughout his employment, Plaintiff Johnson did not receive wages of any kind for hours worked in excess of forty (40) per week, much less overtime premiums of one and one-half (1.5) times his hourly rate, for hours worked in excess of forty (40) hours per week.

66.     For the duration of his employment, Plaintiff Johnson received his payment entirely in check.

67.     Throughout the Johnson Employment Period, Plaintiff Johnson was rarely, if ever, able to take a thirty (30) minute uninterrupted break because he was not permitted to leave his corner.

68.     Upon information and belief, Aaron Van Dyke and Kelvin Quick owned and operated "Quickworks," a company that posted "no parking" signs for Carlo Lizza Paving before Carlo Lizza Paving started milling work on certain roads. Upon information and belief, Quickworks paid certain safety flagpersons twenty-five dollars ($25.00) per hour entirely in cash. Plaintiff Little has spoken to several flaggers who claim that Quick and Van Dyke would deduct two hundred and fifty dollars ($250.00) from their payment each week for "taxes" after Defendant Aly Lizza paid Defendant A&B. Upon information and belief, Quick and Van Dyke would also deduct one (1) hour of pay per day from the cash that the flaggers received for coalition dues.

16

69.     At all relevant times, Plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

70.     Defendants' failure to pay overtime premiums of one and one-half (1.5) times the regularly hourly rate for hours worked in excess of forty (40) per week was a corporate policy that applied to all safety flagpersons other construction employees employed by Defendants.

71.     Upon information and belief, during the period of time for which Plaintiffs and the members of the putative Class performed work on New York City roadways, Defendants failed to ensure payment of the correct prevailing rate of wages and supplemental benefits to which Plaintiffs and other members of the putative Class were entitled.

72.     Notwithstanding the fact that Plaintiffs and other members of the putative Class sometimes worked in excess of eight (8) hours in a day and/or more than forty (40) hours in a week, Defendants failed to pay these individuals daily overtime or the prevailing wages and supplemental benefits required by applicable prevailing wage schedules.

73.     Defendants failed to provide Plaintiffs and their other similarly situated employees with proper wage notices at the time of hire or on February 1 of each year or proper wage statement(s) with every payment of wages or accurate wage statements pursuant to the NYLL.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**

74.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

75.     The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the Collective Action Members.

76.     Defendants have failed to pay Plaintiffs and the Collective Action Members at the correct overtime wages for all of the hours they worked in excess of forty (40) hours in a workweek.

77.     As a result of Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

78.     Defendants' unlawful conduct, as described in this Class and Collective Action Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Class and Collective Action Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the Collective Action Members.

79.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq*.

18

## SECOND CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – UNPAID OVERTIME</u>

80.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

81.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the Class Members.

82.     Defendants have failed to pay Plaintiffs and the Class Members the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

83.     Defendants failed to pay Plaintiffs and the Class Members one and one-half (1.5) times their regular hourly rate for all hours worked in excess of forty (40) per workweek.

84.     Through its knowing or intentional failure to pay Plaintiffs and the Class Members overtime wages for hours worked in excess of forty (40) per week, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations.

85.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

86.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87.    Upon information and belief, the Public Works Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiffs and the employees performing work pursuant to such contracts.

88.    Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contracts for the benefit of the Plaintiffs and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendants to pay the Plaintiffs and Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

89.    Defendants' failure to pay Plaintiffs at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

90.    As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

## FOURTH CAUSE OF ACTION
## <u>UNJUST ENRICHMENT & QUANTUM MERUIT</u>
### (Pled In The Alternative)

91.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92.     Based on Defendants' failure to pay Plaintiffs the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiffs.

93.     Equity and good conscience require that Defendants pay restitution to Plaintiffs.

94.     Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiffs and other employees who performed work pursuant to the contracts.

95.     Plaintiffs provided valuable services to Defendants performing prevailing wage jobs for which Plaintiffs expected compensation.  Defendants knowingly accepted such services yet failed to pay Plaintiffs the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

96.     As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiffs are entitled to relief from Defendants under New York's common law of unjust enrichment.

97.     As a result of Defendants' failure to pay Plaintiffs the reasonable value of the valuable services they rendered, Plaintiffs are entitled to relief from Defendants under New York's common law of quantum meruit.

## FIFTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS</u>

98.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.     At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each Class Member within the meaning of the NYLL, §§ 2 and 651.

100.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

101.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500.00) per employee, as provided for by NYLL, Article 6, §§ 190 et seq., reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS

102.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

103.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing Plaintiffs' overtime rate or rates of pay if applicable; and an accurate count of the number of hours worked, including overtime hours worked if applicable.

104.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100.00) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

(a)    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

(b)    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiffs and their counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to

23

remedy Defendants' violation of the common law and New York State law;

(c)     An order tolling the statute of limitations;

(d)     A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

(e)     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

(f)     An award of compensatory damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, NYLL, and supporting regulations;

(g)     An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA, NYLL and supporting regulations;

(h)     Fifty dollars ($50.00) per Plaintiff and each Class Member for each workweek that the violations of the wage notice provision of the NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the NYLL Class Members as provided for by NYLL, Article 6 § 198(1-b);

(i)     One Hundred dollars ($100.00) per Plaintiff and each Class Member for each workweek that the violations of the wage statement provision of the NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500.00) per Plaintiff and each Class Member as provided for by NYLL, Article 6 § 198(1-d);

(j)     An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiffs and the Class;

(k)     An award of prejudgment and post judgment interest;

(l)     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

(m)     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand

a trial by jury on all questions of fact raised by the Complaint.


Dated: New York, New York
      September 18, 2015

**PELTON & ASSOCIATES PC**

By: _____

Brent E. Pelton, Esq. (BP 1055)
Taylor B. Graham, Esq. (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative collective
and class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Carlo Lizza & Sons Paving Inc., A&B Construction, Ships Point Industries, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


| Signature | Date | Printed Name |
|---|---|---|
| *[signature]* | 8-28-2015 | Donald H Little |

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Carlo Lizza & Sons Paving Inc., A&B Construction, Ships Point Industries, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____    Aug 31 2015    _____
Signature                  Date            Printed Name