IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD LITTLE and TERRENCE JOHNSON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>CARLO LIZZA & SONS PAVING, INC., SHIPS POINT INDUSTRIES LTD., A&B CONTRACTORS LLC and ELIA ALY LIZZA, Jointly and Severally,<br><br>Defendants. | 15 Civ. 7423 (PAE)<br><br>JOINT STATEMENT OF <u>UNDISPUTED FACTS</u> |

Pursuant to the Court's Order of October 5, 2016, the parties, through their undersigned counsel, respectfully submit the following joint statement of undisputed facts. The facts set forth herein are agreed to for all purposes in this action. The parties acknowledge that because there are additional facts that are not included herein, this joint statement is not to be construed as a complete recitation of all facts relevant to this action.

**Background of Defendants' Companies**

*Carlo Lizza & Sons Paving, Inc.*

1. Carlo Lizza & Sons Paving, Inc. ("Carlo Lizza") is in the heavy road and asphalt milling business. (Lizza Tr. at 6:6-6:7)

2. While Carlo Lizza used to perform most of its work on Long Island, the majority of Carlo Lizza's recent work is on New York City ("NYC") roadways. (Lizza Tr. at 6:4-6:16)

3. Carlo Lizza first bid on a milling job on NYC roadways in 2011. (Lizza Tr. at 6:17-6:23)

1

4. Carlo Lizza began its first project to perform milling on NYC roadways in 2012. (*Id.*)

5. From 2011 to the present, Carlo Lizza consistently has had revenues of at least $500,000 per year. (Lizza Tr. at 7:12-7:15)

6. Elia Lizza is the sole owner of Carlo Lizza. (Lizza Tr. at 7:2-7:4)

7. Elia Lizza oversees the payroll at Carlo Lizza and deals with the bank, bonding company and upper management. (Lizza Tr. at 7:18-7:19)

8. Elia Lizza has two sons, Aly Lizza and Keith Lizza. (Lizza Tr. at 7:2-7:24)

9. Aly Lizza manages Carlo Lizza's business in New York City. (Lizza Tr. at 7:2-7:23)

10. Keith Lizza manages all of Carlo Lizza's business in Long Island. (Lizza Tr. at 7:23-7:24)

*A&B Contractors, Inc.*

11. A&B Contractors, Inc. ("A&B") has been in business for approximately two (2) years. (Quick Tr. at 7)

12. From in or around 2013 to the present, A&B has provided employees to Carlo Lizza in connection with Carlo Lizza's work on asphalt milling contracts in NYC. (Quick Tr. at 9)

13. A&B is owned equally by Kevin Quick and Aaron Van Dyke. (Quick 39)

**Prevailing Wage Requirements**

14. Carlo Lizza regularly enters into contracts with the City of New York, Department of Transportation ("DOT") to perform asphalt milling on NYC roadways, which is the grinding of the first two (2) inches of payment in order to correct issues like potholes, cracks and bumps in roadways ("DOT Contracts"). (Lizza Tr. at 8:16-9:3, 11:20-13:25; Deposition Transcript of Donald Little ("Little Tr.") at 7:5-7:9)

2

15. DOT Contracts contain the following Labor Law Requirements: (NYS Department of Design etc. Bid Booklet Project HW2CR14B – 10-19-2012 – Labor Law Requirements at p. 166.) "New York State Labor Law: This Contract is subject to New York State Labor Law Section 220, which requires that construction workers on the site be paid prevailing wages and supplements. The Contractor is reminded that all wage provisions of this Contract will be enforced strictly and failure to comply will be considered when evaluating performance."

16. DOT Contracts require that any subcontractors pay the prevailing rate of wages pursuant to New York Labor Law Section 220 as follows: (NYS Department of Design etc. Bid Booklet Proj. HW2CR14B – 10-19-2012 – Chapter IV – Subcontracts and Assignments, Article 17. Subcontracts - Requirements at p. 205.) "The agreement between the Contractor and its Subcontractor shall include the prevailing wage rates and supplemental benefits to be paid in accordance with Labor Law Section 220."

17. DOT Contracts require (*Id.* at 228-231): "The Contractor· shall strictly comply with all applicable provisions of the Labor Law, as amended. Such compliance is a material term of this Contract…The wages to be paid for a legal day's Work to laborers, workers, or mechanics employed upon the Work contemplated by this Contract or upon any materials to be used thereon shall not be less than the 'prevailing rate of wage' as defined in Labor Law Section 220, and as fixed by the Comptroller in the attached Schedule of Wage Rates and in updated schedules thereof. The prevailing wage rates and supplemental benefits to be paid are those in effect at the time the Work is being performed."

18. DOT Contracts define (*Id.* at p. 190) "Work" as the following: "2:1.33 'Work' shall mean all services required to complete the Project in accordance with the Contract Documents, including without limitation, labor, material, superintendence, management,

3

administration, equipment, and incidentals, and shall include both Contract Work and Extra Work."

19. DOT Contracts define (*Id*. at p. 188) "Contract Work" as the following: "2.1.10 'Contract Work' shall mean everything required to be furnished and done by the Contractor by any one or more of the parts of the Contract referred to in Article 1, except Extra Work as hereinafter defined."

20. DOT Contracts require that employees who do not perform work covered by Section 220 of the Labor Law receive no less than the State Minimum Wage. Article 37. 37.2.6 provides that: "Except for employees whose wage is required to be fixed pursuant to Labor Law Section 220, all persons employed by the Contractor and any Subcontractor in the manufacture or furnishing of the supplies, materials, or equipment, or the furnishing of work, labor, or services, used in the performance of this Contract, shall be paid, without subsequent deduction or rebate unless expressly authorized by Law, not less than the sum mandated by Law. Minimum wages shall be the rates fixed by Federal Law and regulations." (NYS Department of Design etc. Bid Booklet Proj. HW2CR14B – 10-19-2012 –Article 37. 37.2.6 Minimum Wages at p. 229.)

21. The Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules for Pavers and Roadbuilder - Laborer set forth the following Prevailing Wage Rates:

   a. July 1, 2010 through June 30, 2011: $37.71 plus $28.70 in supplemental benefits per hour;

   b. July 1, 2011 through June 30, 2012: $38.84 plus $28.70 in supplemental benefits per hour;

   c. July 1, 2012 through June 30, 2013: $38.99 plus $32.15 in supplemental benefits per hour; (NYS Department of Design – Bid Booklet – Proj HW2CR14B – 10 – 19-2012 at P. 358)

4

    d. July 1, 2013 through June 30, 2014: $39.67 plus $33.55 in supplemental benefits per hour;

    e. July 1, 2014 through June 30, 2015: $40.32 plus $35.15 in supplemental benefits per hour;

    f. July 1, 2015 through June 30, 2016: $40.98 plus $36.92 in supplemental benefits per hour.

22. The Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules for Pavers and Roadbuilders defines covered work as follows: Paving and road construction work, regardless of material used, including but not limited to preparation of job sites, removal of old surfaces, asphalt and/or concrete, by whatever method, including but not limited to milling; laying of concrete; laying of asphalt for temporary, patchwork, and utility paving (but not production paving); site preparation and incidental work before the installation of rubberized materials and similar surfaces; installation and repair of temporary construction fencing; slurry seal coating, maintenance of safety surfaces; play equipment installation, and other related work. (Office of The Comptroller, City Of New York, §220 Prevailing Wage Schedule.) Carlo Lizza's projects pursuant to the DOT Contracts contain prevailing wage requirements. (Lizza Tr. at 91:12-92:2).

23. DOT requires street-opening permits in order to perform asphalt milling on NYC streets. (Lizza Tr. at 91:12-91:22)

24. In order to get a street-opening permit, a contractor has to be working under a NYC contract and the NYC contract itself has a prevailing wage requirement. (Lizza Tr. at 91:12-91:22)

25. The DOT Street Opening Permits issued to Carlo Lizza contain stipulations regarding wage payments which require the payment of prevailing wages to workers on excavations working on the project pursuant to NYLL § 220 prevailing wage schedules (Ex. 1 –

5

Lizza Tr. at 91:12-92:2; Examples of Street Opening Permits with Prevailing Wage Requirements).

26. DOT Street Opening Permits issued to Carlo Lizza include the following language:

"012: FLAG PERSON MUST BE PROVIDED TO STOP PEDESTRIAN AND/OR VEHICLE TRAFFIC WHILE LIFTING MATERIALS OVERHEAD AND ALSO WHEN CROSSING SIDEWALK IN CONJUNCTION WITH CROSSING SIDEWALK PERMITS."

27. DOT Street Opening Permits issued to Carlo Lizza include the following language:

"WAGE01: NYC ADMINISTRATIVE CODE, 19-142, WORKERS ON EXCAVATIONS: A PERSON TO WHOM A PERMIT MAY BE ISSUED, TO USE OR OPEN A STREET, SHALL BE REQUIRED, BEFORE SUCH PERMIT MAY BE ISSUED, TO AGREE THAT NONE BUT COMPETENT WORKERS, SKILLED IN THE WORK REQUIRED OF THEM, SHALL BE EMPLOYED THEREON,
WAGE02: …AND THAT THE PREVAILING SCALE OF UNION WAGES SHALL BE THE PREVAILING WAGE FOR SIMILAR TITLES AS ESTABLISHED BY THE FISCAL OFFICER PURSUANT TO SEC. TWO HUNDRED TWENTY OF THE LABOR LAW, PAID TO THOSE SO EMPLOYED."

**Performance of Asphalt Milling Contracts**

28. Over the last seven (7) years, Carlo Lizza has entered into at least seven (7) asphalt milling contracts with the DOT including: 12B, 14C, 15CW, 14B, 16C, 16B and either 15D or 15E. (Lizza Tr. at 8:16-8:21)

29. Carlo Lizza was the general contractor on the above-listed asphalt milling contracts. (Lizza Tr. at 9:15-9:17)

30. An asphalt milling contract is a contract for the grinding of the first two (2) inches of pavement of a road. (Lizza Tr. at 12:12-12:15)

31. Carlo Lizza's laborers, engineers and drivers perform the milling and sweeping pursuant to milling contracts. (Lizza Tr. at 13:4-13:8, 16:12-16:17)

6

32. The DOT instructs Carlo Lizza specifically which streets to mill and which order to mill in. (Lizza Tr. at 32:9-32:17)

33. The DOT and NYC Department of Design and Construction ("DDC") control everything with respect to DOT milling contracts. (Lizza Tr. at 32:9-32:17; 134:20-134:22)

34. To perform asphalt milling contracts in NYC, Carlo Lizza employs, either directly or through A&B, all workers necessary to complete the contracts. (Lizza at 23-24)

35. The NYC Department of Design and Construction ("DDC") Inspector's Report lists the type of worker on each milling project, including laborers, flaggers, operators, foremen and superintendents. (See, e.g., DDC FOIL documents DDC-8, DDC-18, DDC 22, DDC-27)

36. The DDC Daily Site Patrol form seeks to confirm that adequate flaggers have been utilized. (See, e.g., DDC FOIL documents DDC-14)

37. Carlo Lizza would get a fine if milling was going on and they did not have crossing guards/flaggers working. (Lizza Tr. at 75:9-75:12)

38. DDC's inspector acknowledged that Carlo Lizza's "flagperson maintained traffic and assisted pedestrians cross safely." (DDC FOIL documents DDC-559, DDC-571, 581)

39. The DOT requires Carlo Lizza to employ workers performing the work that Plaintiffs perform when the company does asphalt milling. (Lizza at 19, 75) Plaintiffs identify such workers as "flaggers or flag persons", while Defendants identify said workers as "crossing guards."

40. The DDC oversees the asphalt milling jobs. (Lizza at 134)

41. The DDC recognizes the position of a full-time flag person in its contracts. (Lizza 110)

42. In certain asphalt milling contracts, DDC required Carlo Lizza to bid $75 per hour per flag person. (Lizza 113)

7

43. Carlo Lizza supplies workers identified as flag persons or crossing guards when it performs asphalt milling pursuant to contracts with DOT.

44. In or around 2013, Carlo Lizza entered into a subcontract with A&B for A&B to supply workers identified as crossing guards or flaggers on Carlo Lizza's asphalt milling contracts in New York City. (Lizza Tr. at 21:10-21:14; Subcontractor Agreement HW2CR15CW HW2CR14B HW2CR14C)

45. Pursuant to this subcontract agreement, Carlo Lizza would pay A&B $30 per hour per workers identified as crossing guards or flaggers, whereby A&B would pay its said workers, including Plaintiffs, $20 per hour. (Lizza Tr. at 21; Subcontractor Agreement HW2CR15CW HW2CR14B HW2CR14C)

**Plaintiffs' Employment with Defendants**

46. Since 2011, Carlo Lizza has employed, either directly or through A&B, workers identified as crossing guards or flaggers such as the Plaintiffs to work pursuant to DOT asphalt milling contracts. (Lizza at 21)

47. Carlo Lizza employs five (5) to ten (10) workers identified as crossing guards or flaggers such as the Plaintiffs per asphalt milling contract. (Lizza at 47)

48. Plaintiffs' duties include directing foot traffic and vehicle traffic away from the asphalt milling job site. (Lizza at 75-76). Sometimes this involves using stop and go paddles.

49. Until 2013, Carlo Lizza paid workers identified as flag persons or crossing guards such as the Plaintiffs at what Carlo Lizza believed was the required prevailing wage rate and the same as was paid on Long Island. (Lizza at 103)

50. After 2013, while Plaintiffs' duties remained the same, Carlo Lizza paid Plaintiffs less than the prevailing wage rate. (Lizza at 102)

8

Case 1:15-cv-07423-PAE   Document 104   Filed 10/31/16   Page 9 of 13

51.     Donald Little ("Little") worked for Carlo Lizza from in or around May 2012 through in or around May 2014 and for A&B from in or around March 2015 through in or around August 7, 2015. (Declaration of Donald Little ("Little Decl.") at ¶ 1.)

52.     Terrence Johnson ("Johnson" and, together with Little "Plaintiffs") worked for Carlo Lizza from in or around March 2011 through in or around the spring of 2013 (Declaration of Terrence Johnson ("Johnson Decl.") at ¶ 1.) Said individuals have been identified as either flag persons or crossing guards.

53.     Beginning in or around the spring of 2014, Carlo Lizza began subcontracting with A&B Contractors LLC ("A&B") to provide workers such as Little on DOT Contracts. (Deposition Transcript of Kevin Quick ("Quick Tr." at 7:6-7:8; 8:10-9:8))

54.     Little worked for A&B from in or around March 2015 through in or around August 7, 2015. (Declaration of Donald Little ("Little Decl.") at ¶ 1.)

55.     Little performed the same type of work when working for Carlo Lizza and/or A&B. (Complaint ¶¶ 46-47)

56.     Opt-in Plaintiffs Anthony Miranda, Joseph Thompson, Rodney Brye, Scott DeSantolo, Paul Popolizio, Elvis Cortes, Paolo Constantino, Jonathan Oliver, David Diaz, Alexander Townsend, Joseph Thompson and Vladimir Silfa worked for Carlo Lizza and/or A&B at times during the last six (6) years and performed work on DOT Contracts.  (See 216(b) lists provided by Defendants).

57.     Carlo Lizza and A&B kept track of their employees' who worked on DOT Contracts time on timesheets that listed certain employees as "flaggers." (Quick at 76)

**Payment to Plaintiffs**

58. When Plaintiffs worked for Carlo Lizza pursuant to asphalt milling contracts in New York City, they were paid $30 per hour plus thirty-two dollars ($32.00) per hour for a health annuity. (Complaint, paragraph # 51)

59. When Carlo Lizza subcontracted with A&B to employ Plaintiffs to work on its asphalt milling contracts, Carlo Lizza paid A&B $30 per hour and A&B paid Plaintiffs $20 per hour with no contribution for a health annuity or other benefits. (Quick at 12)

60. Carlo Lizza did not consult with an attorney regarding the amount that Plaintiffs should be paid pursuant to DOT milling contracts. (Lizza at 19)

61. Quick, one of the owners of A&B, thought that the prevailing wage required to be paid to Plaintiffs was between $15 and $18. (Quick at 62)

62. Quick did not consult with an attorney, the Department of Labor or the City of New York Office of the Comptroller to determine the amount to be paid to workers such as the Plaintiffs. (Quick at 62)

63. For work performed the week ending July 24, 2016, on Defendants' contract with DDC project HW2CR16B, Defendants submitted certified payroll documents to the City of New York, Office of the Comptroller, Bureau of Labor Law which show that they paid their crossing guards at the rate of $35.75 per hour and $53.63 for overtime. (DDC-712)

**NYC Comptroller Investigation**

64. There is currently an investigation pending by the City of New York Office of the Comptroller concerning New York Labor Law § 220 and Carlo Lizza.

65. The investigation concerns asphalt milling contracts from 2014 to the present throughout New York City.

**NYC Comptroller Prevailing Wage Memorandums regarding full-time flag person**

66. On March 13, 2001, the Bureau of Labor Law Chief Ira H. Margulis from the Office of the NYC Comptroller issued a Memorandum to Gary Geiersbach, the Director of the Mayor's Office of Construction regarding full-time flag person as a Traffic Control Agent. The Memorandum states as follows: "This memo is being issued for purposes of clarification. When a worker is assigned as a full-time "flag person" and his/her duties are not primarily on a construction work site, but such person is primarily assigned to alleviate vehicular congestion by directing the flow of the street traffic away from the vicinity of the construction site, the worker is performing traffic control duty. Accordingly the worker does not fall within the purview of Labor Law Section 220. An exception exists where the trade practice is that the trade performing the underlying work does its own flagging, e.g., bridge painters. In that event, the flagger receives the same wages as the underlying trade. However, when a worker is utilized on the construction work site, protecting the public from the inherent dangers on and about that site, safeguarding the work crew from the street traffic, and directing the movement of construction equipment in, on, and off the site, that worker is performing flagging duties which fall within the job description of laborer. I hope this explanation is useful in determining the correct classification of worker needed under the terms of the contracts." (Comptroller's Prevailing Wage Memorandum, March 13, 2001.)

67. On May 21, 1998, Thomas C. Modell of the Bureau of Labor Law from the Office of the NYC Comptroller issued an opinion letter to Gary Geiersbach, Director of the Mayor's Office of Construction regarding the "uniformed full-time flag person." The letter states as follows: "Your letter of April 24, 1998 to Comptroller Hevesi concerning the setting of a prevailing rate for uniformed full-time flag persons has been forwarded to me for reply. Upon review of the job specifications provided, copy of which is enclosed, I find that the duties and responsibilities you set forth lend themselves to different situations. When the worker assigned to those duties is

11

not on a construction work site, and is being utilized to alleviate vehicular congestion by directing the flow of street traffic away from the vicinity of the construction site, that worker is performing traffic control duty. Accordingly, the worker does not fall within the purview of Labor Labor Section 220. However, when a worker is utilized adjacent to, or in close proximity to the construction work site, protecting the public from the inherent dangers on and about that site, safeguarding the work crew from street traffic, directing public traffic away from the site, and directing the movement of construction equipment in, on, and off the site, that worker is performing flagging duties which fall within the job specifications of the construction laborer. I hope this explanation is useful in determining the correct classification of worker needed under the terms of the contracts. You may, however, wish to redraft this specification to provide for those different situations and thereby better inform the contractor as to when a laborers or non-covered craft may be used. We are pleased to be of service in these instances." (May 21, 1998 letter from Bureau of Labor Law to Director Mayor's Office of Construction.)

68. The above letters were obtained by Defendants' attorneys in response to a FOIL request to the City of New York Office of the Comptroller on October 13, 2016.

| | |
|---|---|
| PELTON GRAHAM LLC | The Ziskin Law Firm, LLP |
| By: */s/ Brent E. Pelton* <br> Brent E. Pelton <br> Taylor B. Graham <br> 111 Broadway, Suite 1503 <br> New York, NY 10006 <br> Telephone: (212) 385-9700 | By: */s/ Richard Barry Ziskin* <br> Richard Barry Ziskin <br> The Ziskin Law Firm, LLP <br> 6268 Jericho Turnpike, Suite 12a <br> Commack, NY 11725 <br> Telephone: (631) 462-1486 |
| *Attorneys for Plaintiffs, the putative FLSA Collective and Class* | *Attorneys for Defendants Carlo Lizza & Sons Paving, Inc., Ships Point Industries, Ltd. and Elia Aly Lizza* |

Law Offices of Gerald V. Dandeneau, P.C.

By: *Gerald V. Dandeneau*

Gerald V. Dandeneau
425 Broad Hollow Road, Suite 418
Melville, New York 11747
Telephone: (631) 454-0606

*Attorneys for A&B Contractors, LLC*