**U.S. Department of Labor**     Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C.  20210



In the Matter of:

**Disputes concerning the payment of
prevailing wage rates and overtime by:**

| | |
|---|---|
| **SUPERIOR PAVING AND MATERIALS, INC.** | **ARB CASE NO. 99-065** |
| | **ALJ CASE NO. 98-DBA-11** |
| **With respect to laborers and mechanics employed by the prime contractor on Department of Transportation Project No. 0785-1994** | **DATE:  June 12, 2002** |

**BEFORE:     THE ADMINISTRATIVE REVIEW BOARD**

Appearances:

*For Petitioner Superior Paving and Materials, Inc.*:
  Roger L. Sabo, Esq., Denise L. Hanson, Esq., John J. Krimm, Jr.,  *Schottenstein, Zox & Dunn*, *Columbus, Ohio*

*For Respondent Administrator, Wage and Hour Division:*
  Joan Brenner, Esq., Paul L. Frieden, Esq., Steven J. Mandel, Esq., Eugene Scalia, Esq., *U.S. Department of Labor, Washington, D.C.*

### FINAL DECISION AND ORDER

This matter is before the Administrative Review Board (Board) on the Petition for Review filed by Superior Paving and Materials, Inc. (Superior Paving or Petitioner). Superior Paving seeks review and reversal of the February 19, 1999 Decision and Order issued by a United States Department of Labor Administrative Law Judge (ALJ).  The Administrator, Wage and Hour Division, appears before the Board in this matter as Respondent, opposing the Petition for Review.

The ALJ issued the Decision and Order (D&O) after an administrative hearing conducted on October 14 and 15, 1998.  The ALJ ruled that highway construction traffic control work performed for Superior Paving by off-duty police officers fell within the description of the work of a "flagger" and that those individuals were therefore "laborers or mechanics" within the meaning of the Davis-Bacon Act, as amended (DBA or the Act), 40 U.S.C.A. § 276a *et seq.* (West 2001) and the Contract Work Hours and Safety Standards Act

(CWHSSA), 40 U.S.C.A. § 327 *et seq.* (West 2001). Secondly, the ALJ concluded that Superior Paving was the employer of the off-duty police officers and was therefore liable to these employees for prevailing rate and overtime wages as required by the Act and the CWHSSA. Accordingly, the ALJ found that Superior Paving was liable to the employees for prevailing rate back wages in the amount of $16,893.57 and overtime back wages in the amount of $473.67.

Superior Paving petitioned for review on the grounds that the ALJ had misinterpreted the work performed by the off-duty police officers and ignored legal precedent that off-duty police officers are not employees of a construction contractor. The Board accepted the Petition for Review after determining that the Petition was timely filed.

## JURISDICTION AND STANDARD OF REVIEW

The Board has jurisdiction to hear and decide appeals taken from ALJs' decisions and orders concerning questions of law and fact arising under the DBA (and related Acts including the CHWSSA). 29 C.F.R. § 5.1 (2001); 29 C.F.R. § 6.34 (2001); 29 C.F.R. § 7.1(b) (2001).

In reviewing an ALJ's decision, the Board acts with "all the powers [the Secretary of Labor] would have in making the initial decision . . .." 5 U.S.C.A. § 557(b) (West 1994). See also 29 C.F.R. § 7.1(d)(2001) ("In considering the matters within the scope of its jurisdiction the Board shall act as the authorized representative of the Secretary of Labor. The Board shall act as fully and finally as might the Secretary of Labor concerning such matters."). Thus, "the Board reviews the ALJ's findings de novo." *Thomas & Sons Building Contractors, Inc.*, ARB No. 00-050, slip op. at 4 (Aug. 27, 2001); see also *Sundex, Ltd. and Joseph J. Bonavire*, ARB No. 98-130, slip op. at 4 (Dec. 30, 1999).

## BACKGROUND

The facts underlying this dispute are largely uncontested. The State of Ohio's Department of Transportation (ODOT) awarded prime contractor Superior Paving a contract (the contract) for the widening of State Route (SR) 43 located in the Village of Carrollton, Ohio. Joint Exhibit (JX) -1. Superior Paving's road-widening work on SR 43 was partially funded pursuant to the Federal Aid Highway Acts (FAHA), 23 U.S.C.A. § 113 (West 1994), the provisions of which require that such construction be subject to the labor standards provisions of the DBA and the CWHSSA. The contract contained the requisite prevailing wage and overtime labor standards provisions, as specified by the U.S. Department of Labor regulation at 29 C.F.R. § 5.5(a). It also contained a wage determination specifying a minimum hourly basic wage rate of $16.62 and an hourly fringe benefit rate of $3.60 for the classification of "Common Laborers (Group 1)," which included the subclassification of

"Flagperson."  D&O 1; JX-1at C-3F.

Under the heading "Item Special – Law Enforcement Officer with Patrol Car," the contract required Superior Paving to "provide for the service of a law enforcement officer with patrol car for the exclusive purpose of controlling traffic whenever a lane or lanes are being closed or opened."  D&O 1; JX at C-5B.  This contract clause contained an estimate of 200 hours of such law enforcement-officer activity (one hundred hours each for two particular intersections along SR 43) and indicated that "information regarding arrangements for law enforcement services may be obtained by contacting the Village Police . . .."  *Id.*

Superior Paving contacted the Village of Carrollton's Chief of Police, Ronald A. Yeager, and requested that the police department also provide off-duty police officers to perform traffic control work on the project, over and above the estimated 200 hours of law enforcement officer with patrol car duty, which was specified in the "Item Special" of the contract.  T. 328, 329-330, 363-364.  Chief Yeager set an hourly wage rate (with no fringe benefits) of $10.00 which would be payable to the officers.  D&O 2; T. 363.

Superior Paving contacted the Village of Carrollton police department each week during the execution of the contract and provided the days and times and the number of individuals it required; this information was posted at the police department by Chief Yeager.  Any officers who were interested signed up for the duties.  D&O 2; T. 49, 329, 365.  Each morning, the off-duty officers reported to the SR 43 highway construction project site and were informed by Superior Paving employees where that day's construction zone activities would take place and, therefore, where they were to be stationed.  D&O 2; T. 25, 75-76, 114-115, 302.  Each officer recorded the time he or she worked on Village of Carrollton police department forms which were submitted to Superior Paving.  D&O 2; T. 34-5, 80, 108.  Superior Paving's holding company, Oster Enterprises, issued individual checks to the officers; the checks were mailed to the officers' homes or dropped off at the Police Department.  The officers were paid at the previously established rate of $10.00 per hour.  T. 33, 45.

Five (out of the total of 13) affected off-duty officers testified.  Four of those officers[1] gave essentially uniform testimony about the duties they performed.  Those four officers also testified that other officers performed the same duties that they did.  T. 27, 29, 73, 76, 102, 127.  While working on the SR 43 project, those off-duty police officers signaled to oncoming traffic with stop/slow signs furnished by Superior Paving.  D&O 2; T. 27, 73, 122, 302.  On rare occasions, the officers had a patrol car.  T. 26, 72, 121.

---

[1]     Eric Stanbro, Robert Ellington, Lisa Ellington, and Ronnie Wilson.  Eric Stanbro held a non-paying auxiliary commission with the Delroy (Ohio) Marshall's office until he became a Carrollton police officer in November 1995.  T. 23, 37-38. The other officers were members of the Village of Carrollton force.  D&O 2; T. 69, 100, 120-121.

At times, the officers communicated with each other using two-way headsets or radios, which were provided by either the Village of Carrollton Police Department (T. 103) or Superior Paving.  D&O 2; T. 63-4, 302.  From time to time, the off-duty officers placed warning devices, such as traffic barrels and cones, to narrow SR 43 to one through lane in the construction zone.  D&O 2; T. 25, 75, 114-5.  All but one of the off-duty police officers testified that they did so at their own initiative.  D&O 2; T. 87-8, 112, 137.  The remaining officer stated that he was occasionally asked by a Superior Paving employee to set up the equipment for the traffic safety zone.  D&O 2; T. 25.  Greg "Butch" Young, and Richard Hockensmith, who were foremen for Superior Paving, testified that the officers were never instructed to set up work zones.  D&O 3; T. 297-298, 313.

A fifth Village of Carrollton officer, Dale R. Williams, testified that he directed traffic for ten hours on the project and had a police cruiser with him, but did not recall using a stop/slow sign, being instructed by Superior Paving to move construction barriers or cones, or being relieved by anyone.  T. 349-354.  This officer also testified that he did not consider a stop/slow sign something he would normally use as a patrolman.  T. 354.  The ALJ did not describe Williams' duties, but characterized them as "fundamentally different from the duties of the other police officers."  D&O 2 n.1.[2]

Chief Yeager testified that he relieved officers on the site and that (when he did so) he directed traffic using the stop stick furnished by Superior Paving.  T. 374-375.

At the outset of work on the project, the officers wore their regular police uniforms.  In hot weather, however, they wore shorts and tee shirts imprinted with the word "Police" on them. D&O 2; T. 26, 367.  Permission to wear the hot-weather outfits was granted by Chief Yeager. T. 367.  Superior Paving did not permit its own construction crew employees to wear shorts.  T. 301.  Initially, the officers wore safety vests supplied by Superior Paving; later, the Village of Carrollton supplied the vests. D&O 2; T. 72, 101, 122, 368.

With one exception (the auxiliary police officer, Eric Stanbro), the officers had powers of arrest; they wore badges and carried their duty weapons and handcuffs while on the project.  D&O 2; T. 72, 143, 367-368.  One of the officers issued three traffic citations and arrested a motorist who failed to follow his directions.  T. 376-377.  Chief Yeager considered himself to be the off-duty police officers' supervisor and expected them to leave and report for official police duties in the event of an emergency.  T. 369-370.

The officers did not apply to Superior Paving for employment, attend daily meetings of the contractor's construction crew employees, or receive copies of Superior Paving's company policies.  D&O 2; T. 49, 89, 115, 143.

---

[2]     As discussed *infra* at 11, Officer Williams' duties were so "fundamentally different" and his hours worked were so few, that we conclude it is proper to accord him different treatment from the other officers concerned in this case.

A Superior Paving witness testified that the contractor elected to use the off-duty officers (rather than its own crew of laborers) for the traffic control work, because "experience has shown that these patrolmen . . . do a better job controlling the traffic and the traffic responds to them where they don't respond to our laborers." D&O 2; T. 394. This witness also testified that the $10.00 hourly rate established by Chief Yeager was not a factor in Superior Paving's having hired the off-duty police officers; Superior Paving had paid higher rates for such off-duty police officer work on past projects. T. 414-415.

Superior Paving replaced the off-duty officers with members of its regular construction crew when the officers were on break or at lunch. D&O 2, 31, 40, 77, 104, 126. Members of Superior Paving's regular construction crew also directed traffic when more than one area was being worked on, or when traffic otherwise would have come in from side streets. T. 29, 77, 126-127. The crew members wore ordinary work clothes, and reflective vests and directed traffic using the stop/slow sign furnished by Superior Paving. T. 40, 62, 76. When directing traffic, the crew members had the same duties as the officers. T. 29, 77, 104.

## DISCUSSION

### I.    The ALJ correctly ruled that the Village of Carrollton off-duty police officers were "laborers" within the meaning of the Act.

The first issue before the Board is whether the ALJ correctly determined that the off-duty police officers performing traffic control duties on the SR 43 project were "laborers," as that term is used in the Act (and related Acts), and therefore subject to the prevailing and overtime wage provisions of the Act and the CWHSSA, respectively. The Wage and Hour Division argues that the officers performed the manual and physical work of "flaggers" and that they therefore are "laborers," at least in the statutory sense of the word. Superior Paving contends that the officers were hired to serve as a law enforcement presence, are qualitatively different from construction crew members performing the activities of "flaggers," and that they therefore are not "laborers" under the Act and related Acts. Resolution of this question turns on application of the statutes and regulations to the facts of this case. We will focus our analysis on the work performed by the officers which was not subject to the special condition requiring police officer with patrol car duty.[3]

As agreed by the parties, construction of the SR 43 road-widening project was subject

---

[3]    We are unable to ascertain from the record whether the hours of police officer duty specified at page C-5B of the contract are included in this proceeding. Since the parties' briefs did not address that special requirement, we are assuming, for purposes of this Decision and Order, that the police duty specified in the contract is not at issue.

to the prevailing wage provisions of the DBA pursuant to Section 113 of the FAHA, which provides, in pertinent part, that:

> (a) The Secretary [of Transportation] shall take such action as may be necessary to insure that *all laborers and mechanics employed by contractors* or subcontractors on the construction work performed on highway projects on the Federal-aid highways authorized under the highway laws providing for the expenditure of Federal funds upon the Federal-aid systems, *shall be paid wages at rates not less than those prevailing* on the same type of work on similar construction in the immediate locality *as determined by the Secretary of Labor in accordance with the Act of March 3, 1931, known as the Davis-Bacon Act* .
> . . .

23 U.S.C.A. § 113(a) (West 1990) (emphasis supplied) (citation omitted).

Further, Superior Paving's contract obligated it to comply with the CWHSSA's overtime labor standards provisions, which require that a "laborer or mechanic" employed by a contractor in performance of a covered contract receive one and one–half times his basic rate of pay for all hours worked in excess of forty in a week.  JX-1 at C-2-C, ¶7.  See 40 U.S.C.A. § 328(a) (West 2001).

The DBA, CWHSSA, and the FAHA (and their respective legislative histories) do not specifically define the terms "laborer" or "mechanic."   The regulations issued by the Department of Labor to implement the DBA and CWHSSA define these terms in the following manner:

> The term laborer or mechanic includes at least those workers whose duties are manual or physical in nature (including those workers who use tools or who are performing the work of a trade), as distinguished from mental or managerial . . ..  The term does not apply to workers whose duties are primarily administrative, executive, or clerical, rather than manual.

29 C.F.R. § 5.2(m) (2001) (emphasis in original).  The Department's regulations do not further define the term "laborer" or address specific classifications of construction employees.

However, the Wage and Hour Division, the departmental component with expertise in administering the DBA and its related statutes, has further interpreted the term "laborer" in two documents.  In All Agency Memorandum No. 141 (Aug. 19, 1985) (AAM 141) attaching and incorporating an August 16, 1985 opinion letter to the Laborer's International

Union of North America, the Deputy Administrator of the Wage and Hour Division interpreted "flaggers" to be "laborers" under the Act,[4] and described the duties of a flagger as generally consisting of:

> 1.  Standing near or on a construction project site manually using a flag and/or a stop sign to control and direct vehicular or pedestrian traffic around a work site.  A flagger will typically spend a majority of his/her time working in this activity.
>
> 2.  Flaggers may also be required to set up barriers, set out traffic warning cones, or tend flashing warning lights.

AAM 141 at 1; JX-2 at C-4-B.  AAM 141 notes that, in performing the duties of the classification, "a flagger is engaged in the physical activities of lifting and carrying various objects as well as directing the activities of others through body movements, all of which are manual in nature." *Id.*  The AAM 141 opinion letter also states that the work of flaggers is "integrally related to other construction work on the job, since it would be impossible to satisfactorily complete such projects without their services."  JX-2 at C-4-C.

Additional interpretative material is found in § 15e09(a) of the Wage and Hour Division's Field Operations Handbook (FOH).  The FOH establishes procedures and investigative guidance for Wage and Hour Division employees and is available to the public for information concerning the requirements for compliance with various labor laws administered and enforced by the Wage and Hour Division, including the DBA and related statutes.  FOH § 15e09(a) references All Agency Memorandum No. 141 and notes that the duties of flaggers are of a physical and manual nature and that "flaggers typically work on or around heavy or highway construction projects as part of the construction crew; and their work is integrally related and a necessary incident to the other construction activities at the site."

The Board concludes that it is proper to grant deference to the Wage and Hour Division's policy guidance in AAM No. 141 and FOH § 15e09(a), since the Wage and Hour Administrator "is the primary federal authority entrusted with determining the [statute's] scope." *Reich v. Miss Paula's Day Care Center, Inc.*, 37 F.3d 1191, 1194 (6th Cir. 1994). In that case, the court noted that the Wage and Hour Division's opinions "'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance.'" *Id.*, quoting *Skidmore v. Swift*, 323 U.S. 134, 140 (1944).  The Wage Appeals Board (WAB)

---

[4]    It should be noted that prior to 1985, the Wage and Hour Division did not consider flaggers to be laborers or mechanics covered by the DBA.  This now superceded interpretative position was based on the theory that the work of flaggers was not manual in nature.  The Wage and Hour Division's policy of considering flaggers to be covered by the provisions of the DBA was effective October 18, 1985.

– one of this Board's predecessor agencies – noted that the Board generally defers to the Administrator as being

> in the best position to interpret those rules in the first instance . . ., and absent an interpretation that is unreasonable in some sense or that exhibits an unexplained departure from past determinations, the Board is reluctant to set the Administrator's interpretation aside.

*Titan IV Mobile Service Tower*, WAB No. 89-14, slip op. at 7 (May 10, 1991), citing *Udall v. Tallman*, 380 U.S. 1, 16-17 (1965).

We therefore are deferring to the interpretation made by the Wage and Hour Administrator that "flaggers" are "laborers" under the Act, and will apply the interpretative guidance in AAM 141 and FOH § 15e09(a) concerning "flaggers" in analyzing the facts of this case.  When we do so, the work tasks described by officers Eric Stanbro, Robert Ellington, Lisa Ellington and Ronnie Wilson fall within the terms of the regulatory definition of "laborer" and the interpretative Agency guidance contained in AAM 141 and FOH § 15e09(a).

The duties these officers performed were manual or physical in nature rather than mental or managerial.  They stood at or near the highway construction project site and manually directed traffic by use of a stop sign.  D&O 2; T. 27, 73, 122, 302.  They spent the majority of their working time engaged in this activity.  Additionally, although not required to do so, they set up or moved traffic barrels or cones.  D&O 2; T. 25, 75, 114-5.

The facts that they were not otherwise members of the construction crew and that they were not required to move the traffic barrels or cones, do not change the nature of the activities in which they engaged, which were manual in nature and which were required to complete the construction project.

We therefore reject Superior Paving's arguments that these officers cannot be considered laborers because they were not members of the construction crew and were not required to move the barrels or cones.  Similarly, we reject Superior Paving's contention that the interpretative guidance is not applicable to the case before us because it does not specifically address the situation of off-duty police officers engaged in traffic control.  The guidance is pertinent to the situation of any person engaged in the activities described, and therefore is pertinent to this case.

Superior Paving also argues both that the officers were qualitatively different (because they were law enforcement officers) from construction crew members engaged in the same activities and that they were engaged in a fundamentally different activity, *i.e.*, creating a law enforcement presence.  The specific facts of this case lead us to find that these officers engaged in virtually the same activities as construction crew members, and their attire and

powers did not differentiate them in any fundamental way from the construction crew members.

It is uncontested that construction crew members substituted for and supplemented these officers in performing traffic control activities. D&0 2; T. 2, 29, 31, 40, 77, 104, 126-127. The officers themselves testified that the crew members performed the same duties. T. 29, 77, 104. As noted above, those duties and activities fit squarely within the description of the duties and activities of "flaggers," as set forth in AAM 141 and the FOH. As a consequence, these officers were "flaggers" during the time they performed those activities for Superior Paving. The officers' law enforcement powers and attire may have enhanced, but did not change, their activities or the nature of their activities. Thus, they were not, as Superior Paving contends, qualitatively different for these purposes, or engaged in a fundamentally different activity. In reaching this conclusion, we have considered the testimony that on rare occasions a patrol car may have been present when the officers were working.[5] The absence of testimony establishing a close connection between any car and the officers, and the infrequency of the cars' appearances, cause us to conclude that the cars did not change the officers' function.

The testimony of these officers was relatively uniform as to the duties they performed; these officers also testified that other officers who did not testify performed the same duties. T. 22-9, 76, 127. In short, the record demonstrates that there was a pattern and practice as to the duties performed. It is well established that testimony by representative employees may establish a violation.[6] We therefore find that the officers who did not testify also were "flaggers" for purposes of this case.

_____

[5]   Officers Eric Stanbro, Robert Ellington, and Ronnie Wilson gave testimony that a patrol car was present infrequently. T. 26, 72, 121. Officer Lisa Ellington testified that no patrol car was present when she was working. T. 101. We note that it is common knowledge that a patrol car may be used merely as a warning device, rather than for law enforcement purposes.

[6]   Courts commonly allow representative employees to prove violations with respect to all employees. *Anderson v. Mt. Clemens Pottery, Co.*, 328 U.S. 680, 684 (1946); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir. 1988), *cert. denied*, 488 U.S. 1040 (1989); *Donovan v. Williams Oil Co.*, 717 F.2d 503 (10th Cir. 1983); *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir. 1983); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468 (11th Cir. 1982); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir. 1973); *McLaughlin v. DialAmerica Marketing, Inc.*, 716 F.Supp. 812 (D.N.J. 1989); *Marshall v. Brunner,* 500 F.Supp. 116 (W.D.Pa. 1980), *aff'd in part, rev'd in part*, 668 F.2d 748 (3d Cir. 1982). *Cf. Secretary of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991). Thus, not all employees need to testify to prove the violations or to recoup back wages. *Martin v. Selker Bros.*, 949 F.2d 1286, 1298 (3d Cir. 1991). In this case, Superior Paving has contended that the ALJ's ruling was erroneous as to all of the officers, not that he could not render findings as to officers who did not testify.

We note that one of the other officers made an arrest and issued some traffic citations. T. 376-7. Although we find that the time spent in the activities of making the arrest and issuing citations is police enforcement, and not covered under the Act, that was a lone occurrence, without known duration. We therefore conclude that that officer, as well as the other non-testifying officers, was a "flagger" throughout his service on the project.

The case of Officer Dale R. Williams presents different facts from those of the officers discussed above. Officer Williams had a police cruiser throughout the time that he directed traffic. He apparently did not use a stop sign for signaling traffic, did not move traffic barrels or cones, and was never relieved by construction crew members. The ALJ found that his duties were "fundamentally different from the duties of the other police officers," but did not further consider this difference in determining that all of the officers were all "laborers" under the Act. We agree with the ALJ that Officer Williams' duties were "fundamentally different" from those of the other officers. Although directing traffic, even without a stop sign, arguably is manual labor, we find based on the facts that Officer Williams had a police cruiser with him throughout his tour of duty, apparently did not use a stop sign, and was not relieved by construction crew members, that he was serving as a law enforcement presence. He both clearly presented himself as a law enforcer and had the capability of pursuing miscreants. Because he conducted his activities in conjunction with the police vehicle, moreover, his activities were not interchangeable with those of the construction crew members serving as "flaggers." Under the facts in totality, we therefore find that he did not fit within the definition of a "flagger" and was not a "laborer" under the Act.[7] Given this conclusion, we hereby modify the ALJ's Order so as strike restitution of back wages in the amount of $102.20 originally found due Officer Dale R. Williams. See JX-4.

We have considered and hereby reject each of Superior Paving's other arguments that the work performed by the off-duty police officers was not covered by the prevailing wage and overtime labor standards provisions of the Act and CHWSSA. Superior Paving contends that the police officers here were "Traffic Directors," not "Flaggers," and therefore not laborers under the Act. As its authority for this proposition, Superior Paving cites a section in a manual issued by the Federal Highway Administration which purports to set forth a United States Department of Labor ruling that "(a) The proper title for an off-duty policeman directing traffic while in the employ of a contractor is 'traffic director;' and (b) The work is nonmanual in nature, and is not subject to the current minimum wage provisions." Ex. PC-7. The Federal Highway Administration manual is not a document issued by the agency charged with interpreting the Act, and based on the numbering of the purported United States Department of Labor ruling which appears in the cited manual section, it appears that the ruling would have been issued in 1975, well before the 1985 change in the Department's

---

[7]    Although this opinion does not address the special condition of the contract requiring a police officer with patrol car at certain intersections, we note that only police officers would meet that requirement.

interpretation of coverage of "flaggers" under the Act.  Since it does not qualify as a current interpretation of the Act by an agency to which deference is due, and is merely a summary statement without any reasoning to support it, we find it unpersuasive.

Superior Paving's argument that Congress did not intend to include workers such as the off-duty officers in this case within the ambit of the DBA's covered "laborers and mechanics" also is unpersuasive.  Superior Paving offers no language from the Act or its legislative history to support its proposition, only dicta from a WAB case.

Similarly, Superior Paving's citation to a 1986 Ohio Department of Industrial Relations determination that police officers directing traffic around a project site are not laborers subject to the State's "mini Davis-Bacon Act" is not convincing.  No reasoning was set forth in that determination other than the Ohio Attorney General's Office indication to the Ohio Department that " the off duty policeman does not perform work on the project as a laborer, workmen [sic] or mechanic and, therefore, is not required to be paid the prevailing wage rate."  Likewise, the 1982 letter to Governor Rhodes from a Legal Advisor at the Ohio Department of Industrial Relations which references Ohio jurisprudence, an IRS determination letter, and conversations with unnamed "Federal authorities" who allegedly at that time considered an off-duty officer not to be a laborer or mechanic under the Act, but rather an independent contractor, is of little utility.  The Ohio agency's determination and the 1982 letter to Governor Rhodes relate to state law and do not consider the interpretative guidance of the Wage and Hour Division, which we have determined warrants deference in this case.  Moreover, the State agency determination and the advice letter were rendered on the basis that the off-duty officer was an independent contractor, a question which we consider and dismiss in Section II of our decision, *infra*.

Petitioner also cites various state law decisions which do not interpret the DBA (or any other federal labor statute) or consider the Wage and Hour Division's interpretations of the Act.  Those cases apply the requirements of statutes unrelated to the Act to police officers engaged in their usual occupational activities.  Therefore, we find these state law cases holding that the work of police (and firefighters) was exempt from wage standards statutes because such work was nonmanual or was the work of executives, administrative employees, or professionals irrelevant to the present proceedings.  Petitioner contends that the "[R]egulations for the Davis-Bacon Act explicitly provide that individuals who are exempt from the Minimum Wage Act because they are executives, administrators or professionals are not laborers or mechanics.  29 C.F.R. § 5.5(m) [sic]."  To qualify under the exemption in 29 C.F.R. § 5.2(m), the primary duty of an individual must be work meeting the regulatory requirements in Part 541 defining "employee employed in a bona fide executive, administrative, or professional capacity."  Under the facts of this case, the primary duties of the officers did not involve performance of work meeting those requirements.

Accordingly, with the exception of Officer Dale R. Williams, we conclude that the ALJ appropriately determined that the Village of Carrollton's off-duty police officers were

performing the duties of flaggers on the SR 43 road project and therefore were laborers within the meaning of the Act, FAHA, CWHSSA, and the Department of Labor's implementing regulation at 29 C.F.R. § 5.2(m) (2001).

**II.     The ALJ properly concluded that Superior Paving – as prime contractor on the SR 43 widening project – is liable for the payment of DBA prevailing and CWHSSA overtime wages to the affected off-duty police officers who were employed or working as laborers within the meaning of the Act.**

Having reached the conclusion that certain of the off-duty police officers working on the SR 43 project fit within the definition of "flaggers," and were laborers or mechanics subject to the DBA and CWHSSA labor standards provisions, we turn to the remaining issues raised by the Petition for Review.  Petitioner argues that the ALJ erred in determining that the off-duty officers were Superior Paving's employees and that Petitioner was liable for the payment of the applicable DBA prevailing hourly and fringe benefit rates and the CWHSSA overtime rates.

As noted previously, the contract contained various provisions required under the DBA, the CWHSSA and their implementing regulations.  More specifically, it stated:

> All mechanics and laborers employed or working upon the site of work will be paid unconditionally . . . the full amounts of wages and bona fide fringe benefits . . . due at time of payment.  The payment shall be computed at wages not less than those in the wage determination of the Secretary of Labor (hereinafter "the wage determination") which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the contractor or its subcontractors and such laborers and mechanics.

JX-1 at C-2B.

This language is a stipulation required by 29 C.F.R. § 5.5, which in turn implements that portion of the Act which bars any alleged contractual relationship as a defense against the requirement of paying prevailing wages.  40 U.S.C.A. § 276a(a) (West 1994).  The language relating to payment "regardless of any contractual relationship alleged" was not a part of the original 1931 version of the Act, but was added by amendment in 1935 to ensure that all workers performing the duties of laborers and mechanics on covered projects received the prevailing wages established for their classification of employment.  In short, this language was enacted to prevent contractors from circumventing the DBA's requirements by resort to legal technicalities or traditional notions of employer/employee relationships. S. Rep. No. 1155, 74th Cong., 1st Sess., p. 3; H. Rep. No. 1756, 74th Cong., 1st Sess., p. 3.

Thus, as the WAB explained in *Lance Love, Inc.*, WAB No. 88-32, slip op. at 2 (Mar. 28, 1991):

> Section 1(a) of the Act [40 U.S.C.A. §276a(a)] applies a functional rather than a formalistic test to determine coverage: if someone works on a project covered by the Act and performs tasks contemplated by the Act, that person is covered by the Act, regardless of any label or lack thereof.

As noted by the WAB in further discussing the Act's "contractual relationship" clause:

> If a person works on a job site covered by the Davis-Bacon Act, that person is an 'employee' within the meaning of the Act regardless of the common law relationship between the worker and the contractor.  Congress clearly intended covering such workers regardless of the attempts of the contractor to distance itself from Davis-Bacon obligations.

*N.B.A. Enterprises, Ltd.*, WAB No. 88-16, slip op. at 2 (Feb. 22, 1991).

Since the officers working as laborers were working on the highway construction site, they fit within the terms of the contractual language and case law requiring payment of at least the wage determination amount to mechanics or laborers employed or working upon the site of work.

Superior Paving does not address the specific provisions of the contract, or the Act, regulations, and case law discussed above.  Instead, it supports its contention that it should not be held liable for the payment of the laborer's prevailing wage rate by citing state court decisions, tax court memos, and a revenue ruling.  Because of the specific language in the contract, which covers laborers "employed or working upon" the site, those references are not pertinent.[8]

---

[8]    We note that the cases are also not pertinent to these facts.  The State court decisions hold that a police officer is not the employee of a third party contractor when the officer is assigned by a superior public official to perform the work of a police officer (*i.e.*, acts in an extension of his regular employment or performs a public function).  Because they depend upon determinations that the officer is performing police officer duties or public functions, they are not relevant to this case where we have specifically found that the officers were performing the work of laborers under the Act.  The two Tax Court Memos cited by Superior Paving (*March v. Commisioner*, T.C. Memo.1981-339, and *Kaiser v. Commissioner*, T.C. Memo 1996-526) are cases in which the Tax Court found that the off duty police

(continued...)

In addition to the statutory and our decisional law bases for finding Superior Paving liable for back wages as the employer of the off-duty police officers working as "flaggers," we note that Petitioner is also these employees' employer-in-fact under the so-called "traditional" test for establishing an employer/employee relationship.  Superior Paving established the hours within which the officers would work, and where they would perform their duties (based on the location of construction), provided the officers with equipment (the stop/slow sign, and communications equipment, and, for a time, safety vests), provided a set rate of pay, directly received their weekly time sheets and (through its holding company, Oster Enterprises), paid them for their services. The officers' work was an integral part of Superior Paving's business (*i.e.,* highway construction), the officers had no opportunity for profit or loss and made no investment in the business, and no special skill or initiative was required for the work performed.  *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059-1060 (2d Cir. 1988) (arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 *et seq.* (West 1998).

Although the Chief of Police considered the off-duty police to be employees of the Village of Carrollton, that opinion is not determinative.  Neither is it relevant that Superior Paving did not treat the off-duty police officers in exactly the same manner as it treated its regular construction crew.[9]

Superior Paving – as the prime contractor on a project subject to the requirements of the Act and the CWHSSA – is liable for the payment of the prevailing and overtime wages to the off-duty police officers who worked as laborers because of the application of the Act and the contractual language to which it agreed.  Moreover, Superior Paving would be liable

---

(...continued)
officer hired by a third party was not an employee of the police department, but the Court did not rule as to the actual status of the officer's off-duty activities (*i.e.*, whether the officer was an independent contractor or an employee of the company which benefited from his services).  These cases are contrary to Superior Paving's argument that the officers here were employees of the Village of Carrollton, since they reason that the kind of control exercised by the police departments (which was not unlike that of the Village of Carrollton police department) was insufficient to create an employee-employer relationship.  The Revenue Ruling (Rev. Rul. 74-162) is advice finding that the city is the employer of off-duty policemen whose service discharged the police department's obligation to provide private protection, where there was an agreement between the bank and the police department, and the bank paid the department a fixed amount for the services.  The record here does not reflect any such obligation or any payment to the Village of Carrollton police department.

Additionally, we note that while Superior Paving has now taken the position that the Police Department was the employer of the officers, it apparently took the position before the ALJ that the officers were independent contractors.  As noted above, the 1935 amendments to the Act specifically excluded using contractual relationship as a defense.

[9]     For instance, the off-duty officers did not attend Superior Paving employee meetings; nor did they receive copies of the company's employee handbook.  T. 49.

for wage deficiencies owed the off-duty police officers as their employer under the traditional, or economic reality, test for determining the existence of an employer/employee relationship.[10]

**CONCLUSION**

For the foregoing reasons, the Administrative Law Judge's Decision and Order dated February 19, 1999, is **AFFIRMED** in part and modified in part in accordance with the instructions herein.

**SO ORDERED.**

**JUDITH S. BOGGS**
**Administrative Appeals Judge**

**WAYNE C. BEYER**
**Administrative Appeals Judge**

**OLIVER M. TRANSUE**
**Administrative Appeals Judge**

---

[10] We note that our ruling that the Village of Carrollton off-duty police officers were laborers and that Superior Paving, as prime contractor, is liable for the payment of DBA prevailing and CWHSSA overtime wages to the affected off-duty police officers employed as laborers is limited to the facts of this case and the circumstances presented here.