UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
DONALD LITTLE and TERRENCE JOHNSON,
Individually and On Behalf of All Others Similarly Situated,

                                                        No.: 15-CV-7423 (PAE)

                              Plaintiffs,

-against-

CARLO LIZZA & SONS PAVING, INC.,
SHIPS POINT INDUSTRIES LTD., A&B CONTRACTORS LLC
and ELIA ALY LIZZA, Jointly and Severally,

                              Defendants.
--------------------------------------------------------------------------------x


## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT


The Ziskin Law Firm, LLP
Richard B. Ziskin
6268 Jericho Turnpike, Suite 12A
Commack, NY 11725
Telephone: (631) 462-1417

Attorneys for Defendants Carlo Lizza & Sons Paving, Inc.,
Ships Point Industries, Ltd. and Elia Aly Lizza

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………p. 1

STATEMENT OF FACTS…………………………………………………………...p. 4

    CARLO LIZZA & SONS PAVING, INC. ………………………………….........p. 4

    PLAINTIFFS' EMPLOYMENT WITH THE DEFENDANTS……………………p. 5

    NYC DOT WORK……………………………………………………………….p. 7

    NYC DOT STANDARD HIGHWAY SPECIFICATIONS ………………………...p. 7

    NYC DOT STANDARD HIGHWAY SPECIFICATION SECTION 6.52 ………...p. 7

    THE 2009 SPECIFICATION- UNIFORMED FULL-TIME
    FLAGPERSON……………………………………………………………………p. 7

    THE 2010 SPECIFICATION- UNIFORMED FULL-TIME FLAGPERSON.........p. 9

    THE 2015 SPECIFICATION- CROSSING GUARD………………………………p. 11

    ADDENDA TO CONTRACT NO. HW2CR15C2………………………….....p. 12

    THE NYC DDC INSPECTOR REPORTS IDENTIFIED THE FLAGGERS AS
    PERFORMING TRAFFIC CONTROL……………………………………….........p. 12

    THE NYC DDC CONTRACT ACKNOWLEDGES THAT NOT ALL
    CONTRACT WORK IS SUBJECT TO PREVAILING WAGE PAY
    COVERED BY NYS LABOR LAW § 220………………………………...........p. 12

    PREVAILING WAGE REQUIREMENTS FOR CONSTRUCTION WORKERS…p. 12

    PREVAILING WAGE SCHEDULES FOR PAVERS AND ROADBUILDERS…..p. 13

    NYC DOT STREET OPENING PERMITS…………………………………….p. 13

I. ARGUMENT……………………………………………………………………p. 14

A.    STANDARD FOR SUMMARY JUDGMENT……………………………………..p. 14

B.    NEW YORK STATE LABOR LAW § 220……………………………….……...p. 15

1.    NEW YORK CITY PREVAILING WAGE REQUIREMENTS……………..……p. 16

i

2.      THE NEW YORK CITY COMPTROLLER'S OFFICE…………………………..p. 17

3.      NEW YORK CITY COMPTROLLER'S PREVAILING WAGE POSTING
FOR THE "PAVER AND ROADBUILDER" CLASSIFICATION…………………....p. 17

4.      NYC COMPTROLLER PREVAILING WAGE MEMORANDUMS
REGARDING FULL-TIME FLAGPERSON…………………………………………..p. 19

5.      THE NYSDOL BUREAU OF PUBLIC WORK HAS PUBLISHED
ANSWERS TO FREQUENTLY ASKED QUESTIONS REGARDING THE
APPLICABILITY OF NYS LABOR LAW § 220………………………………………p. 20

6.      IT IS THE POLICY OF THE NYSDOL BUREAU OF PUBLIC WORK
TO PROVIDE ADVANCE NOTICE OF NEW CLASSIFICATIONS ENTITLED
TO PREVAILING WAGE RATE PAY……………………………………………....p. 21

II.     **PLAINTIFFS ARE NOT ENTITLED TO PREVAILING WAGES FOR
THEIR WORK IN CONNECTION WITH CARLO LIZZA'S ASPHALT
MILLING PROJECTS**…………………………………………………………………p. 21

A.      PLAINTIFFS DID NOT PERFORM CONSTRUCTION WORK…………...…..p. 21

1.      CARLO LIZZA'S UNION LABORERS PERFORMED MPT WORK …………p. 22

2.      THE DDC'S RECORDS CLEARLY SET FORTH THAT PLAINTIFFS
PERFORMED TRAFFIC CONTROL DUTIES…………………………………………p. 22

3.      PLAINTIFFS DID NOT DIRECT THE MOVEMENT OF
CONSTRUCTION EQUIPMENT IN, ON, AND OFF THE CONSTRUCTION SITE….p. 22

B.      WORKERS PERFORMING FLAGGING AND CROSSING GUARD
DUTIES ARE NOT ELIGIBLE TO RECEIVE PREVAILING WAGE PAY…………….p.23

1.      THE STATE AND CITY AGENCY INTERPRETATIONS ……………………..p. 23

2.      THE NYC COMPTROLLER INTERPRETATION IS ENTITLED TO
DEFERENCE BECAUSE THE COMPTROLLER IS VESTED WITH THE
AUTHORITY TO MAKE SUCH DETERMINATION……………….........................p. 24

III.    **CONCLUSION**…………………………………………………………….…p. 25

## **TABLE OF AUTHORITIES**

**Cases**

Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994)…………………p. 14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505,
91 L. Ed. 2d 202 (1986)…………………………………………………………………p. 14

Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996)……………………p. 14

Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)………………………….…......p. 14

Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996)…………………………p. 15

Williamson Roofing & Sheet Metal Co. v Town of Parish, 139 AD2d 97,
103, N.Y. App. Div. 1988)……………………………………………………………..p. 15

Matter of Nelson's Lamp Lighters v Roberts, 136 AD2d 810, 811, lv denied
73 NY2d 702, N.Y. App. Div. 1988)………………………………………………...p. 15, 24

Matter of Tenalp Constr. Corp. v Roberts, 141 AD2d 81, 85, N.Y. App. Div. 1988)…….p. 15, 24

Matter of Kelly v Beame, 15 NY2d 103, 109, NYS Court of Appeals 1965)……………p. 15, 24

GE v. N.Y. State Dep't of Labor, 154 A.D.2d 117, 551 N.Y.S.2d 966,
N.Y. App. Div. 1990)…………………………………………………………………..p. 15, 24

Varsity Tr. v Saporita, 98 Misc 2d 255, 259-260, affd 71 AD2d 643,
affd 48 NY2d 767, , N.Y. App. Div. 1979)……………………………………………..p. 15

Matter of Dadson Plumbing Corp. v Goldin, 104 AD2d 346, mod on
other grounds 66 NY2d 713, N.Y. App. Div. 1984; 1936 Opns Atty Gen 344)………….p. 16

**Statutes, Rules & Regulations**

New York State Labor Law § 220………………………………………………….p. 2-3, 8-13,

15-17, 19-20, 24

New York City Administrative Code § 19-142……………………………………………p. 16

<u>**PRELIMINARY STATEMENT**</u>

Defendants' Carlo Lizza & Sons Paving, Inc. ("Carlo Lizza"), Ships Point Industries Ltd., and Elia Aly  Lizza ("Lizza") (collectively, the "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' Donald Little ("Little"), Terrence Johnson ("Johnson") and the opt-in Plaintiffs (collectively with the named Plaintiffs, "Plaintiffs") motion for an order for partial summary judgment seeking an Order requiring the Defendants to pay prevailing wages to flagpersons charged with performing traffic control duties.

In the context of this action, a flagperson (also referred to as "flagger" or "crossing guard") is an individual who directs vehicular and pedestrian traffic away from a construction site using hand gestures, signs and/or flags. The flagger directing traffic is responsible for maintaining the safety and efficiency of traffic <u>outside the construction site</u>. Efficient traffic control outside the construction zone permits construction site activity to safely proceed inside the construction zone.  Plaintiffs' flagging duties <u>did not</u> cause them to work inside the construction work zone and such flaggers <u>did not at any time</u> direct the movement of construction equipment in, on, and/or off the construction site.

As set forth herein, the named Plaintiffs performed traffic control duty.  This litigation arises from work performed by Carlo Lizza which arose from contracts between the company and the New York City Department of Transportation ("NYC DOT"), which are managed by the New York City Department of Design and Construction ("NYC DDC"). Plaintiffs have been interchangeably referred to as "flaggers" or "crossing guards" in connection with the asphalt milling work performed pursuant to such contracts. When making a determination as to whether work is covered by the prevailing wage, the pivotal question is the nature of the work actually performed, rather than the job title of the employee at issue. Plaintiffs are referred to as both

"flaggers" and "crossing guards" because the NYC DOT Standard Highway Specifications have used both terms to describe the traffic control duties performed by Plaintiffs. Regardless of job title, the Plaintiffs <u>did not</u> perform duties that are covered by the prevailing wage law because they were solely tasked with performing traffic control duties.

A review of the parties' stipulated facts as well as the relevant contract documents, administrative materials, statutes and case law regarding the payment of prevailing wages in New York State and New York City clearly support the conclusion that Plaintiffs did not perform "laborers work" inside the construction site. Plaintiffs are not entitled to receive wages in accordance with the prevailing wage classifications and rates as set by the New York City Comptroller's Office pursuant to New York Labor Law § 220 as they were merely employed to perform traffic control functions.

The New York State Labor Law requirement that workers employed on public works projects receive prevailing wages only extends to construction workers employed inside the construction site and does not extend to certain segments of work, including but not limited to superintendents, management, administration, product fabrication, trucking and/or incidentals performed in connection with public work projects. Whether or not the classification of work performed is covered by the prevailing wage law is a matter within the Labor Department's expertise and such classification decision should not be disturbed without a clear showing that the classification does not reflect the nature of the work actually performed.

With respect to flagging for traffic control purposes, a written directive from the fiscal officer charged with setting New York City's prevailing wage rate pursuant to § 220, the Office of the New York City Comptroller, sets forth that a full time "flag person" whose primary duties are to alleviate vehicular congestion away from the construction site <u>is performing "traffic</u>

control duty" and that such work <u>does not fall within the prevailing wage requirement of New York Labor Law § 220.</u>

Similarly, the relevant NYC DCC and NYC DOT contract documents require that full time "flagpersons" and/or "crossing guards" must be provided and that unless such workers are "directing construction equipment" or performing "laborer tasks" that <u>such work is not covered by New York Labor Law § 220.</u>

Specifically, the NYC DOT "Standard Highway Specifications Volume II of II, August 1, 2015" maintains a detailed Section regarding "Crossing Guards." The NYC DOT standard highway specification states in bold type that there is no prevailing wage requirement with respect to crossing guards.

> **"6.52CG.5. PRICE TO COVER. The Contractor is advised that until the Comptroller of the City of New York sets a wage rate for crossing guards, there are no prevailing wage rates for crossing guards."** (Annexed as Exhibit "C" to the Declaration of Aly Lizza." ("Lizza Decl."))

Since there is no dispute that the Plaintiffs maintained traffic and assisted pedestrians crossing outside the construction zone, no reasonable juror could conclude that the Plaintiffs were entitled to receive the prevailing wage rate set by the New York City Comptroller for the "Paving and Roadbuilding Laborer" classification when such individuals admittedly did <u>not</u> perform "paving" and/or "roadbuilding" work and/or any of the job duties described therein.

As there is no genuine dispute as to any material facts on this issue, Defendants urge that the Court find as a matter of law that the Plaintiffs are not entitled to be paid prevailing wages for the flagging work they performed in connection with Carlo Lizza's NYC DOT asphalt milling projects and that such individuals are <u>not</u> to be classified as "Paving and Roadbuilding Laborers".

3

## STATEMENT OF FACTS

## CARLO LIZZA & SONS PAVING, INC.

Carlo Lizza is in the heavy road construction and asphalt milling business. (Joint Statement of Undisputed Material Facts ("Rule 56.1") ¶ 1, Annexed as Exhibit "A" to the Declaration of Taylor Graham.) Carlo Lizza began its first asphalt milling project on NYC roadways in 2012. (Rule 56.1, ¶ 4) Elia Aly Lizza is the sole owner of Carlo Lizza. (Rule 56.1, ¶ 6) Elia Lizza has two sons, Aly Lizza and Keith Lizza. (Rule 56.1, ¶ 8) Aly Lizza manages Carlo Lizza's business in New York City. (Rule 56.1, ¶ 9) Carlo Lizza regularly enters into contracts with the NYC DOT to perform asphalt milling on NYC roadways. Asphalt milling is the grinding and removal of the first two (2) inches of asphalt pavement in order to correct issues like potholes, cracks and bumps in roadways ("NYC DOT Contracts"). (Rule 56.1, ¶ 14; Lizza Decl. ¶ 3)

Carlo Lizza has entered into at least seven (7) asphalt milling contracts with the NYC DOT including Contract Nos.: 12B, 14C, 15CW, 14B, 16C, 16B and either 15D or 15E. (Rule 56.1, ¶ 28; Lizza Decl. ¶ 4) Carlo Lizza served as the general contractor on these asphalt milling contracts. (Rule 56.1, ¶ 29)

The NYC DOT specifically instructs Carlo Lizza which streets to mill and which order to mill them in. (Rule 56.1, ¶ 32) Both the NYC DOT and NYC Department of Design and Construction ("DDC") direct Carlo Lizza's project work. (Rule 56.1, ¶ 33) The DDC manages the asphalt milling projects. (Rule 56.1, ¶ 40)

It is undisputed that Carlo Lizza's laborers, engineers and truck drivers perform the milling and sweeping necessary to perform the asphalt milling contracts. (Rule 56.1, ¶ 31) Pursuant to collective bargaining agreements with various Building & Construction Trade Unions, Carlo Lizza employs union represented construction workers, including laborers,

4

operating engineers and truck drivers to perform the asphalt milling and sweeping work required by the NYC DOT. (Lizza Decl. ¶ 5)

## PLAINTIFFS' EMPLOYMENT WITH THE DEFENDANTS

Beginning in 2011, Carlo Lizza has employed workers identified as flaggers or crossing guards, either directly or through subcontractor Defendant A&B Contractors, LLC ("A&B"), pursuant to the requirements of the NYC DOT asphalt milling contracts. (Rule 56.1, ¶ 46) Plaintiffs' duties include directing foot traffic and vehicle traffic away from the asphalt milling job site, sometimes using stop and go paddles. (Rule 56.1, ¶ 48)  Regardless of their job title, the duties of the flaggers and/or crossing guards on the aforementioned projects were limited to directing vehicular and pedestrian traffic away from the asphalt milling job site. (Lizza. Decl. ¶ 7) The flaggers were stationed outside the construction zone and directed non-construction traffic outside the construction site. (Lizza. Decl. ¶ 7) Such individuals were employed as full-time flagpersons or crossing guards and performed no other duties. (Lizza. Decl. ¶ 7) Individuals employed as full time flaggers and/or crossing guards did not direct the movement of construction equipment in, on, and off the construction site. Further, such individuals did not work inside the construction zone. (Lizza Decl. ¶ 8)

Plaintiffs and those employed as flaggers and/or crossing guards did not perform any of the following job duties: (i) paving and road construction work, regardless of material used, including but not limited to preparation of job sites, (ii) removal of old surfaces, asphalt and/or concrete, by whatever method, including but not limited to milling; laying of concrete; laying of asphalt for temporary, patchwork, and utility paving (but not production paving); (iii) site preparation and incidental work before the installation of rubberized materials and similar surfaces; (iv) installation and repair of temporary construction fencing; (v) slurry seal coating,

(vi) maintenance of safety surfaces; (vii) play equipment installation and/or (viii) other related work. Further, flaggers and crossing guards did not perform any job duties associated with the following job titles: (i) formsetter, (ii) raker, (iii) shoveler and/or (iv) screed person. (Lizza Decl. ¶ 12)

In connection with the referenced NYC DOT construction projects, Carlo Lizza's laborers, who are members of Laborers' Local Union 175 and Laborers' Local Union 1298, have been solely responsible for maintaining and securing the perimeter of the asphalt milling work sites, which is known as "maintenance and protection of traffic" or "MPT" work. The Carlo Lizza MPT crew consisted of a Union foreman and laborers who are responsible for loading and unloading traffic barrels and related apparatus. The Transcript of Aly Lizza is annexed as Exhibit "H" to the Ziskin Decl., p. # 45 The MPT crew set all construction detours and set the boundaries of each job. (Lizza Decl. ¶ 13) With respect to the referenced NYC DOT construction projects, Carlo Lizza's union laborers, known as the "dump man" and the "milling foreman", were responsible for moving construction barrels to allow construction vehicles the ability to enter and exit the construction site. Flaggers and/or crossing guards did not perform such work. (Lizza Decl. ¶ 14)

Until 2013, Carlo Lizza paid flaggers performing work in New York City at what it wrongly believed was the required prevailing wage rate. (Rule 56.1, ¶ 49)  During and prior to 2013, when Plaintiffs worked for Carlo Lizza pursuant to asphalt milling contracts in New York City, they were paid thirty dollars ($30.00) per hour plus thirty-two dollars ($32.00) per hour in supplemental benefits for health and annuity. (Complaint, paragraph # 51) (Rule 56.1, ¶ 58) After 2013, while Plaintiffs' duties remained the same, Carlo Lizza did not pay Plaintiffs the

NYC Comptroller's prevailing wage rate set for the classification known as "Paving and Roadbuilding Laborers" as it had since learned that it was not required to do so. (Rule 56.1, ¶ 50)

Beginning in 2013 and continuing to date, A&B was hired as a subcontractor which provided flaggers to Carlo Lizza in connection with its asphalt milling contracts in New York City. (Rule 56.1, ¶ 12, 53) When Carlo Lizza subcontracted with A&B to employ flaggers to work at its asphalt milling contracts, it paid A&B thirty dollars ($30.00) per hour per flagger and A&B paid its flaggers twenty dollars ($20.00) per hour with no contribution for a health, annuity or other benefits. (Rule 56.1, ¶ 45, 59)

**NYC DOT WORK**

NYC DOT Contracts define "Work" as the following:

"2:1.33 'Work' shall mean all services required to complete the Project in accordance with the Contract Documents, including without limitation, labor, material, superintendence, management, administration, equipment, and incidentals, and shall include both Contract Work and Extra Work." (Rule 56.1, ¶ 18)

DOT Contracts define "Contract Work" as the following:

"2.1.10 'Contract Work' shall mean everything required to be furnished and done by the Contractor by any one or more of the parts of the Contract referred to in Article 1, except Extra Work as hereinafter defined." (Rule 56.1, ¶ 19)

The DDC recognizes the position of a full-time flagperson in its contracts. (Rule 56.1, ¶ 41)

**NYC DOT STANDARD HIGHWAY SPECIFICATIONS**

"This publication has been prepared by the New York City Department of Design and Construction (NYCDDC) to provide a compilation of standard requirements, called specifications, used by the New York City Department of Transportation for street construction contracts. These specifications define the Contractor's responsibility in meeting each specification, enumerate the Department's expectations and how they are going to measure and pay, and explain what the Contractor is expected to provide. When this publication, entitled Standard Highway Specifications and dated …, is incorporated by reference into the Department's construction contracts, it is made a part of that document." (Annexed as Exhibits "A" to "C" to the Lizza Decl.")

**NYC DOT STANDARD HIGHWAY SPECIFICATION SECTION 6.52**

**THE 2009 SPECIFICATION- UNIFORMED FULL-TIME FLAGPERSON**

As of February 1, 2009, the NYC DOT Standard Highway Specifications set forth a requirement for contractors to provide full-time flagpersons to direct and detour traffic. (Annexed as Exhibit "A" to the Lizza Decl.") This provision was set forth in Section 6.52. In pertinent part, the 2009 NYC DOT Standard Highway Specification provides that:

"**6.52.2 DESCRIPTION**. The Contractor shall furnish full-time uniformed flagpersons to control vehicular and pedestrian traffic..."

"**6.52.3 METHODS**…A flagperson uniform consistent with OSHA standards, shall consist of a reflectorized safety vest for nighttime work and an iridescent safety vest for daytime work, worn over the outer clothing; a regulation hard hat; and a stop/slow paddle signaling device or in emergency situations a reflectorized international orange flag of plasticized cloth 18" square on a 36" shaft. Each flagperson shall be English speaking, properly trained, instructed and experienced in flagperson duties, and required to meet the Engineer's approval. **Each flagperson paid under this item must be a full-time flagperson. If any worker performing services under this item is also assigned the task of directing construction equipment (as per attached Example #2, flagperson "A") or any laborer tasks, then such worker shall be deemed to be subject to the provisions of Labor Law §220 Prevailing Wage Schedule.** (Emphasis added)

"**6.52A.5. PRICE TO COVER.** The contract price per person-hour shall cover the cost of all labor, materials, equipment, and insurance necessary to employ a uniformed full-time flagperson, and equip him/her with safety vests, hard hats, and signaling devices, including all other incidental costs necessary to control and detour traffic, **as shown on the Contract Drawings, the attached Examples #1 and #2 (excluding flagperson "A" in Example #2), or as directed by the Engineer. Payment for flagperson "A" in Example #2, shall be deemed to be included under other items of work, as appropriate."** (Emphasis added)

Two (2) drawings follow Section 6.52 in the 2009 Specification and are identified as "Example # 1" and "Example # 2". (Annexed as Exhibit "A" to the Lizza Decl.")  Example # 1 depicts an individual "directing non-construction traffic" outside the "construction site." Example # 1 is intended to illustrate a flagger or crossing guard who is not entitled to the prevailing wage. Example # 2 depicts three (3) individuals, labeled "A", "B" & "C". Individuals "B" and "C" are situated outside the "construction site" and "directing non-construction traffic". Such individuals are not entitled to be paid the prevailing wage. Finally, Individual "A" is drawn

inside the "construction site" and is entitled to receive the prevailing wage as per Section

6.52A.5. (Annexed as Exhibit "A" to the Lizza Decl.")

## THE 2010 SPECIFICATION- UNIFORMED FULL-TIME FLAGPERSON

In pertinent part, the 2010 NYC DOT Highway Specification provides that:

>    **6.52.2. DESCRIPTION.** The Contractor shall furnish an adequate number of competent
>    flagpersons to control vehicular and pedestrian traffic when it is necessary to maintain
>    alternating one- way traffic in one lane of a two-way roadway, and at all other locations
>    where construction operations, construction vehicles and equipment, and temporary
>    traffic patterns related to the construction operations require positive temporary traffic
>    control for safe, efficient traffic operations."

>    **6.52.3. METHODS.** All flagpersons, whether paid for under this item or not, shall be
>    English speaking and adequately trained in flagging operations by a recognized training
>    program such as that provided by the American Traffic Safety Services Association, the
>    National Safety Council, unions or construction industry associations, or by an individual
>    who holds a current certification as a flagger training instructor from such a  program.

>    All flagpersons, whether paid for under this item or not, their apparel, hand-
>    signaling devices,  and procedures to be used by them shall be in compliance with the
>    requirements of Chapter 6E. FLAGGER CONTROL, in the Federal "Manual on Uniform
>    Traffic Control Devices for Streets and Highways" 2009 Edition, or later edition.

>    Prior to the start of flagging operations, the Contractor shall provide to the Engineer a list
>    of certified flagpersons to be used in the contract, identifying the source of flagger
>    training for each individual. When requested by the Engineer, flagpersons shall
>    demonstrate their competency in flagging procedures. Flagpersons not competent in
>    flagging procedures to the satisfaction of the Engineer shall be retrained or replaced at
>    once. **Each flagperson paid under this item must be a full-time flagperson. If any
>    worker performing services under this item is also assigned the task of directing
>    construction equipment (as per attached Example #2, flagperson 'A') or any laborer
>    tasks, then such worker shall be deemed to be subject to the provisions of Labor
>    Law §220 Prevailing Wage Schedule and will not be paid for under this Item.**
>    (Emphasis added)

>    **6.52A.4. MEASUREMENT**. The quantity to be measured for payment shall be the
>    number of person-hours of uniformed flagperson service actually performed, as
>    authorized by the Engineer. **Laborers who are not full-time flagperson will not be
>    measured for payment as flagperson under this or any other item.** Each uniformed
>    flagperson shall be required to work a minimum of eight hours a day and the Contractor
>    will be given a minimum of 12 hours advanced notice by the Engineer as to when to
>    furnish a  flagperson. (Emphasis added)

**6.52A.5. PRICE TO COVER. The contract price per person-hour shall cover the cost of all labor, materials, equipment, and insurance necessary to employ a uniformed full-time flagperson, and equip him/her with safety vests, hard hats, and signaling devices, including all other incidental costs necessary to control and detour traffic, as shown on the Contract Drawings, the attached Examples #1 and #2 (excluding flagperson "A" in Example #2), or as directed by the Engineer.**

**Payment for flagperson "A" in Example #2, shall be deemed to be included under other items of work, as appropriate.** (Emphasis added) (Annexed as Exhibit "B" to the Lizza Decl.")

The two (2) drawings that follow Section 6.52 in the 2010 Specification are identical to

the drawings that follow the 2009 Specification (Annexed as Exhibit "B" to the Lizza Decl.")

## THE 2015 SPECIFICATION- CROSSING GUARD

In pertinent part, the 2015 NYC DOT Standard Highway Specification, Section 6.52 CG

was modified with job title designation changed to "Crossing Guard" rather than "Flagperson".

The provision provides that:

"**6.52CG2 DESCRIPTION**. The Contractor shall furnish an adequate number of competent crossing guards to control vehicular and pedestrian traffic when it is necessary to  maintain alternating one-way traffic in one lane of a two-way roadway, and at all other locations  where construction operations, construction vehicles and equipment, and temporary traffic patterns related to the construction operations require positive temporary traffic control for safe, efficient traffic operations."

"**6.52CG3 METHODS**…Prior to the start of crossing guard operations, the Contractor shall provide to the Engineer a list of certified crossing guards to be used in the contract, identifying the source of crossing guard training for each individual. When requested by the Engineer, crossing guards shall demonstrate their competency in crossing guard procedures.  Crossing guards not competent in controlling vehicular and pedestrian traffic procedures to the satisfaction of the Engineer shall be retrained or replaced at once. **Each crossing guard paid under this item must be a full-time crossing guard. If any worker performing services under this item is also assigned the task of directing construction equipment (as per attached Example #2, worker acting as a flagperson 'A') or any laborer tasks, then such worker shall be deemed to be subject to the provisions of Labor Law §220 Prevailing Wage Schedule and will not be paid for under this Item."** (Emphasis Added)

"**6.52CG.5. PRICE TO COVER…** The Contractor is advised that until the Comptroller of the City of New York sets a wage rate for crossing guards, there are no prevailing wage rates for crossing guards."** Payment for flagperson "A" in Example

#2, shall be deemed to be included under other items of work, as appropriate. (Annexed as Exhibit "C" to the Lizza Decl.")

The two (2) drawings that follow Section 6.52 CG in the 2015 Specification are identical to the drawings that follow the 2009 and 2010 Specifications. (Annexed as Exhibit "C" to the Lizza Decl.")

## ADDENDA TO CONTRACT NO. HW2CR15C2

In pertinent part, Volume 3 of 3 Schedule A Addenda Nos. 1 and 2 to Carlo Lizza Contract No.: WH2CR15CW includes Section 6.52 CG. The provision provides that:

"**6.52CG2 DESCRIPTION**. The Contractor shall furnish an adequate number of competent crossing guards to control vehicular and pedestrian traffic when it is necessary to maintain alternating one-way traffic in one lane of a two-way roadway, and at all other locations where construction operations, construction vehicles and equipment, and temporary traffic patterns related to the construction operations require positive temporary traffic control for safe, efficient traffic operations."

"**6.52CG3 METHODS**…Prior to the start of crossing guard operations, the Contractor shall provide to the Engineer a list of certified crossing guards to be used in the contract, identifying the source of crossing guard training for each individual. When requested by the Engineer, crossing guards shall demonstrate their competency in crossing guard procedures. Crossing guards not competent in controlling vehicular and pedestrian traffic procedures to the satisfaction of the Engineer shall be retrained or replaced at once. **Each crossing guard paid under this item must be a full-time crossing guard. If any worker performing services under this item is also assigned the task of directing construction equipment (as per attached Example #2, worker acting as a flagperson 'A') or any laborer tasks, then such worker shall be deemed to be subject to the provisions of Labor Law §220 Prevailing Wage Schedule and will not be paid for under this Item."** (Emphasis Added)

**6.52CG.5. PRICE TO COVER. The contract price per person-hour shall cover the cost of all labor, materials, equipment, and insurance necessary to employ a uniformed full-time crossing guard, and equip him/her with safety vests, hard hats. and signaling devices, including all other incidental costs necessary to control and detour traffic, as shown on the Contract Drawings, the Examples #1 and #2 on pages 395 and 396 (excluding worker acting as a flagperson 'A' in Example #2), or as directed by the Engineer. Payment for flagperson 'A' in Example #2, shall be deemed to be included under other items of work, as appropriate**. (Annexed as Exhibit "E" to the Declaration of Taylor Graham.") (Emphasis Added)

## THE NYC DDC INSPECTOR REPORTS IDENTIFIED THE FLAGGERS AS PERFORMING TRAFFIC CONTROL

The NYC DDC Inspector's Report lists the type of worker on each Carlo Lizza milling project, including laborers, flaggers, operators, foremen and superintendents. (See, e.g., DDC FOIL documents DDC 7-8, DDC 17-18, DDC 21-22, DDC-27, Annexed as Exhibit "A" to the Declaration of Richard B. Ziskin.")("Ziskin Decl.") (Rule 56.1, ¶ 35) These Inspector's Reports categorize laborers and flaggers <u>as separate classifications</u>. (Ziskin Decl. Exhibit "A") The DDC's Inspector Reports recorded that Carlo Lizza's **"flagperson maintained traffic and assisted pedestrians cross safely."** (DDC FOIL documents DDC-559, DDC-571, 581, (Annexed as Exhibit "B" to the Ziskin Dec l.") (Rule 56.1, ¶ 38) (Emphasis Added)

## THE NYC DDC CONTRACT ACKNOWLEDGES THAT NOT ALL CONTRACT WORK IS SUBJECT TO PREVAILING WAGE PAY COVERED BY NYS LABOR LAW § 220

The NYC DDC contracts require that employees who do <u>not</u> perform work covered by Section 220 of the Labor Law receive no less than the State Minimum Wage. In this regard, Article 37. 37.2.6, provides as follows:

> **"Except for employees whose wage is required to be fixed pursuant to Labor Law Section 220, all persons employed by the Contractor and any Subcontractor in the manufacture or furnishing of the supplies, materials, or equipment, or the furnishing of work, labor, or services, used in the performance of this Contract, shall be paid, without subsequent deduction or rebate unless expressly authorized by Law, not less than the sum mandated by Law. Minimum wages shall be the rates fixed by Federal Law and regulations."** (NYS Department of Design etc. Bid Booklet Proj. HW2CR14B – 10-19-2012 –Article 37. 37.2.6 Minimum Wages at p. 43, Annexed as Exhibit "C" to the Ziskin Decl.") (Rule 56.1, ¶ 20)(Emphasis Added)

## PREVAILING WAGE REQUIREMENTS FOR CONSTRUCTION WORKERS

The relevant NYC DDC contracts contain prevailing wage requirements. (Rule 56.1, ¶ 22) Carlo Lizza's contracts with NYC DDC contain the following Labor Law Requirements:

(NYS Department of Design etc. Bid Booklet Project HW2CR14B – 10-19-2012 – Labor Law

Requirements at p. 10, Annexed as Exhibit "C" to the Ziskin Decl.)

> **"New York State Labor Law: This Contract is subject to New York State Labor Law Section 220, which requires that <u>construction workers</u> on the site be paid prevailing wages and supplements.** The Contractor is reminded that all wage provisions of this Contract will be enforced strictly and failure to comply will be considered when evaluating performance." (Rule 56.1, ¶ 15) (Emphasis Added)

## PREVAILING WAGE SCHEDULES FOR PAVERS AND ROADBUILDERS

The Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules for

"Pavers and Roadbuilders" defines covered work as follows:

> "Paving and road construction work, regardless of material used, including but not limited to preparation of job sites, removal of old surfaces, asphalt and/or concrete, by whatever method, including but not limited to milling; laying of concrete; laying of asphalt for temporary, patchwork, and utility paving (but not production paving); site preparation and incidental work before the installation of rubberized materials and similar surfaces; installation and repair of temporary construction fencing; slurry seal coating, maintenance of safety surfaces; play equipment installation, and other related work." (Office of The Comptroller, City of New York, §220 Prevailing Wage Schedule. Annexed as Exhibit "D" to the Declaration of Taylor Graham.")

## NYC DOT STREET OPENING PERMITS

NYC DOT requires street-opening permits to perform asphalt milling on NYC streets.

(Rule 56.1, ¶ 23) In order to obtain a street-opening permit, a contractor has to be working under

a NYC contract and the NYC contract has a prevailing wage requirement. (Rule 56.1, ¶ 24) The

NYC DOT Street Opening Permits issued to Carlo Lizza contain stipulations regarding wage

payments which require the payment of prevailing wages to "workers on excavations" working

on the project pursuant to NYLL § 220 prevailing wage schedules  (Rule 56.1, ¶ 25) DOT Street

Opening Permits issued to Carlo Lizza include the following language:

> "Wage01: NYC administrative Code, 19-142, workers on excavations: a person to whom a permit may be issued, to use or open a street, shall be required, before such permit may be issued, to agree that none but competent workers, skilled in the work required of them, shall be employed thereon,

13

Wage02: …and that the prevailing scale of union wages shall be the prevailing wage for similar titles as established by the fiscal officer pursuant to sec. Two hundred twenty of the Labor Law, paid to those so employed." (Rule 56.1, ¶ 27)

DOT Street Opening Permits issued to Carlo Lizza include the following language:

"012:   Flag person must be provided to stop pedestrian and/or vehicle traffic while lifting materials overhead and also when crossing sidewalk in conjunction with crossing sidewalk permits." (Rule 56.1, ¶ 26)

# I.   ARGUMENT

## A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the nonmovant, that no rational jury could find in the nonmovant' s favor. See Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the nonmovant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). The nonmovant cannot rely on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not

14

credible. See Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996).

## B.  NEW YORK STATE LABOR LAW § 220

"It is well settled that the primary purpose and intent of the prevailing wage law (Labor Law § 220) is to protect workers by ensuring that they have an effective remedy to secure the prevailing wage" (Williamson Roofing & Sheet Metal Co. v Town of Parish, 139 AD2d 97, 103, N.Y. App. Div. 1988). The "prevailing rate of wage" is that paid under collective bargaining agreements to at least 30% of those employed "in the same trade or occupation" in a given locality (Labor  Law § 220 [5] [a]).  The New York State Appellate Division has held that the "trade or occupation" classifications for work covered by Labor Law § 220 are a matter given to the expertise of the Department of Labor. (see, Matter of Nelson's Lamp Lighters v Roberts, 136 AD2d 810, 811, lv denied 73 NY2d 702, N.Y. App. Div. 1988; see also, Matter of Tenalp Constr. Corp. v Roberts, 141 AD2d 81, 85, N.Y. App. Div. 1988) and courts are strongly disinclined to disturb them, absent a clear showing that a classification does not reflect "the nature of the work actually performed" (Matter of Kelly v Beame, 15 NY2d 103, 109, NYS Court of Appeals 1965). (see, GE v. N.Y. State Dep't of Labor, 154 A.D.2d 117, 551 N.Y.S.2d 966, N.Y. App. Div. 1990)

Under Labor Law § 220, when a company is working on a public project it must pay its workers and laborers the prevailing wage rate.  "An analysis of the Labor Law reveals that the legislators were interested in protecting that specific portion of the work force which is involved in the construction, replacement, maintenance and repair of public works" ( Varsity Tr. v Saporita, 98 Misc 2d 255, 259-260, affd 71 AD2d 643, affd 48 NY2d 767, , N.Y. App. Div. 1979). Job titles are not controlling.  A contractor subject to the provisions of Labor Law § 220 cannot avoid or circumvent the protection afforded to those workers covered by the law by

15

bestowing job titles instead of adequate pay.  Rather, "**[the] pivotal question is the nature of the work actually performed**" (Matter of Kelly v Beame, 15 NY2d 103, 109; see also, Matter of Dadson Plumbing Corp. v Goldin, 104 AD2d 346, mod on other grounds  66 NY2d 713, N.Y. App. Div. 1984; 1936 Opns Atty Gen 344)(Emphasis added). The determination that a particular undertaking should fall within a particular job classification **is a matter within the expertise of the New York State Department of Labor** (see, Matter of Nelson's Lamp Lighters v Roberts, 136 AD2d 810; Labor Law § 220.) (Emphasis added).

Pursuant to Section § 220(5)(e) the "fiscal officer" is typically the State Commissioner of Labor. However, where a city has a population in excess of one million, the Comptroller of such city acts as the fiscal officer.

Pursuant to Section § 220(3)(c) it is the duty of the fiscal officer to ascertain and determine the schedules of supplements to be provided and wages to be paid workers, laborers and mechanics on such public work and such schedules shall be annexed to and form a part of the specifications for the work. Such fiscal officer shall also file with the department having jurisdiction such schedules prior to the time of the commencement of the advertisement for bids on all public works proposed to be constructed.

### 1. <u>NEW YORK CITY PREVAILING WAGE REQUIREMENTS</u>

The New York City Administrative Code § 19-142 provides that for the construction, maintenance, repair, obstruction and closure of streets and sidewalks a permit must be issued which provides that the workers performing such work be paid the prevailing scale of union wages as established by the fiscal officer pursuant to section two hundred twenty of the labor law. No permit shall be issued until such agreement shall have been entered into with the department, and all such permits hereafter issued shall include therein a copy of this provision.

16

2. **THE NEW YORK CITY COMPTROLLER'S OFFICE**

The Bureau of Labor Law sets and enforces prevailing wage and benefit rates for workers employed on public works projects and building service contracts for New York City government agencies. The Bureau's four divisions annually determine prevailing wage and benefit rates, investigate alleged violations of prevailing wage and living wage laws, calculate underpayments including interest and civil penalties, and bring enforcement proceedings at the New York City Office of Administrative Trials and Hearings (OATH). The Bureau also engages in extensive outreach and develops educational materials on prevailing wage and living wage compliance. (Overview of the New York City Comptroller's Office, Annexed as Exhibit "D" to the Ziskin Decl.")

3. **NEW YORK CITY COMPTROLLER'S PREVAILING WAGE POSTING FOR THE "PAVER AND ROADBUILDER" CLASSIFICATION**

Effective July 1st of each year, the Office of the New York City Comptroller issues an annual prevailing wage schedule pursuant to § 220. One such classification is referred to as the "Paver & Roadbuilder".  Under this category of construction work, five (5) subcategories also exist. (Office of The Comptroller, City of New York, §220 Prevailing Wage Schedule. Annexed as Exhibit "D" to the Declaration of Taylor Graham.")

One subcategory, referred to as the "Paver & Roadbuilder – Laborer" is defined as:

"Paving and road construction work, regardless of material used, including but not limited to preparation of job sites, removal of old surfaces, asphalt and/or concrete, by whatever method, including but not limited to milling; laying of concrete; laying of asphalt for temporary, patchwork, and utility paving (but not production paving); site preparation and incidental work before the installation of rubberized materials and similar surfaces; installation and repair of temporary construction fencing; slurry seal coating, maintenance of safety surfaces; play equipment installation, and other related work."

Each subcategory is assigned an hourly wage and supplemental benefit rate. For example, the "Paver & Roadbuilder – Laborer" for the period: 7/1/2013 - 6/30/2014 was as follows:

- Wage Rate per Hour: $39.67
- Supplemental Benefit Rate per Hour: $33.55

Two (2) other categories, include the "Paver & Roadbuilder – Formsetter" and the "Production Paver & Roadbuilder – Raker". Although these positions are self-explanatory, neither subcategory is defined in the schedule.

The final two (2) subcategories include the "Production Paver & Roadbuilder - Screed Person", which is defined as "Production paving is asphalt paving when using a paving machine or on a project where a paving machine is traditionally used." Also the "Production Paver & Roadbuilder– Shoveler" is defined as a "General laborer (except removal of surfaces - see Paver and Roadbuilder-Laborer) including but not limited to tamper, AC paint and liquid tar work."

It should be noted that none of the New York City Comptroller's aforementioned subcategories of the "Paver and Roadbuilder- Laborer" include "flagger" and/or "crossing guard" as classification work performed by the "Paver and Roadbuilder". There is further no stand-alone classification for flaggers and/or crossing guards contained in the prevailing wage schedule.  In fact, such classification is not contained anywhere in the prevailing wage schedule.

Although the prevailing wage schedule annexed to Exhibit "D" of Plaintiffs' Declaration includes the "flagperson" category under the "Laborer-Concrete" Classification, it has been stipulated that Carlo Lizza performed asphalt milling work.  As such, Carlo Lizza would not have cause to employ any individuals covered by any classification within the "Labor-Concrete" section of the schedule. Moreover, the prevailing wage schedule listing the flagperson sub-classification was promulgated by the New York State Department of Labor and is inapplicable

18

to work performed for New York City agencies such as the NYC DDC and/or NYC DOT as

jurisdiction for prevailing wage schedules rests solely with the New York City Comptroller.

**4.   NYC COMPTROLLER PREVAILING WAGE MEMORANDUMS REGARDING
FULL-TIME FLAG PERSON**

In 2001, the Bureau of Labor Law Chief of the Office of the NYC Comptroller issued a

Memorandum to the Director of the Mayor's Office of Construction regarding full-time

flagperson as a Traffic Control Agent. In pertinent part, the Memorandum states as follows:

"This memo is being issued for purposes of clarification. When a worker is assigned as a
full-time "flag person" and his/her duties are not primarily on a construction work site,
but such person is **primarily assigned to alleviate vehicular congestion** by directing the
flow of the street traffic away from the vicinity of the construction site, **the worker is
performing traffic control duty**. **Accordingly the worker does not fall within the
purview of Labor Law Section 220**... However, when a worker **is utilized on the
construction work site**, protecting the public from the inherent dangers on and about that
site, safeguarding the work crew from the street traffic, **and directing the movement of
construction equipment in, on, and off the site, that worker is performing flagging
duties which fall within the job description of laborer**..." (Comptroller's Prevailing
Wage Memorandum, March 13, 2001.) (Rule 56.1, ¶ 66) (Emphasis Added)

Previously, in 1998, the Bureau of Labor Law from the Office of the NYC Comptroller

issued an opinion letter to the Director of the Mayor's Office of Construction regarding the

"uniformed full-time flag person." In pertinent part, the letter states as follows:

"**When the worker assigned to those duties is not on a construction work site, and is
being utilized to alleviate vehicular congestion by directing the flow of street traffic
away from the vicinity of the construction site, that worker is performing traffic
control duty. Accordingly, the worker does not fall within the purview of Labor
Labor Section 220.** However, when a worker is utilized adjacent to, or in close
proximity to the construction work site, protecting the public from the inherent dangers
on and about that site, safeguarding the work crew from street traffic, directing public
traffic away from the site, **and directing the movement of construction equipment in,
on, and off the site**, that worker is performing flagging duties which fall within the job
specifications of the construction laborer..." (May 21, 1998 letter from Bureau of Labor
Law to Director Mayor's Office of Construction.) (Rule 56.1, ¶ 67) (Emphasis Added)

It is clear from the foregoing that the crux of the issue as to whether Plaintiffs are entitled to coverage under § 220 is whether such individuals directed the movement of construction equipment in, on or off the job site and/or performed paving and roadbuilding work.  If an employee is primarily assigned to alleviate vehicular congestion by directing the flow of the street traffic away from the vicinity of the construction site, such employee is NOT covered by § 220.  It is clear from the evidence herein that Plaintiffs did not, in fact, direct any construction equipment. (Lizza. Decl. ¶ 7-8, 12-14)

5. **THE NYSDOL BUREAU OF PUBLIC WORK HAS PUBLISHED ANSWERS TO FREQUENTLY ASKED QUESTIONS REGARDING THE APPLICABILITY OF NYS LABOR LAW §  220**

With regard to the payment of prevailing wage and supplements to various workers, the NYS DOL Bureau of Public Work has provided the following guidance as to whether or not certain classifications of employees are covered by the NYS prevailing wage law:  (Annexed as Exhibit "E" to the Ziskin Decl.")

- "Supervisors and/or foremen working with the tools must be paid at the prevailing rate for the classification of work being performed. **When strictly overseeing workers, supervisors or foremen are not covered under Article 8 prevailing rate requirements."** (Emphasis Added)
- With regard to "off-site" manufacturing or fabrication operations, "The prevailing wage and supplements requirements of Section 220 of the Labor Law are <u>not</u> applicable to work on materials used in connection with a public work project, where such work is <u>not</u> performed at or about the site of the project, and is <u>not</u> customarily and normally performed at such site."

Similarly, the NYS DOL Bureau of Public Work has issued "Guidelines for Classification and Policy for Truck Drivers" and has detailed certain functions that are <u>not</u> covered by the State's prevailing wage law: (Annexed as Exhibit "F" to the Ziskin Decl.")

- "Where materials or supplies are delivered to a public work site and dropped or stockpiled, the hauling dropping and/or stockpiling of such materials is **not** subject to prevailing wage requirements. Further, the work of contractor's employees who are involved in the pick-up and delivery of supplies from outside

20

suppliers are **not** subject to prevailing wage requirements. The work of these drivers, whose work is off-site, would instead be governed by whatever agreed upon rate existed between the drivers and their employers."

- Individuals who are employed as drivers hauling asphalt/concrete to and from commercial plants are **not** subject to prevailing wage requirements. (Emphasis Added)

6. **IT IS THE POLICY OF THE NYSDOL BUREAU OF PUBLIC WORK TO PROVIDE ADVANCE NOTICE OF NEW CLASSIFICATIONS ENTITLED TO PREVAILING WAGE RATE PAY**

In 2002, the NYS Bureau of Public Work issued a Memorandum informing its investigative staff that where the Bureau determines that a classification of employees is entitled to prevailing wage pay that the Bureau will (i) issue a determination of the proper pay rate, (ii) issue a notice to all interested parties and (iii) set a reasonable predetermined time period before implementing and enforcing any change. (Annexed as Exhibit "G" to the Ziskin Decl.")

It is clear that the NYC DOT Highway Specifications, particularly, Section 6.52CG.5. PRICE TO COVER recognizes that the New York City Comptroller has not set a prevailing wage rate for crossing guards.

II. **PLAINTIFFS ARE NOT ENTITLED TO PREVAILING WAGES FOR THEIR WORK IN CONNECTION WITH CARLO LIZZA'S ASPHALT MILLING PROJECTS**

A. **PLAINTIFFS DID NOT PERFORM CONSTRUCTION WORK**

Plaintiffs did not perform paving and roadbuilding laborers' work as set forth in each of the applicable prevailing wage schedule published by the NYC Comptroller. Specifically, Plaintiffs did not perform the following tasks:

- Paving and road construction work, regardless of material used, including but not limited to preparation of job sites, removal of old surfaces, asphalt and/or concrete, by whatever method, including but not limited to milling;
- laying of concrete; laying of asphalt for temporary, patchwork, and utility paving (but not production paving);
- site preparation and incidental work before the installation of rubberized materials and similar surfaces;

21

- installation and repair of temporary construction fencing; slurry seal coating, maintenance of safety surfaces; play equipment installation, and other related work. (See Lizza Decl. ¶ 12)

In support of this position, the NYC DDC Inspector Reports detailed that Carlo Lizza's flaggers "maintained traffic and assisted pedestrians cross safely." (Rule 56.1, ¶ 38 and 48, Ziskin Decl. Exhibit "B")

## 1. CARLO LIZZA'S UNION LABORERS PERFORMED MPT WORK

Carlo Lizza's laborers, who are members of Laborers' Local Union 175 and Laborers' Local Union 1298, are responsible for maintaining and securing the perimeter of the asphalt milling work sites. The MPT crew set the construction detours and the boundaries of each job. (Lizza Decl. ¶ 13; The Transcript of Aly Lizza is annexed as Exhibit "H" to the Ziskin Decl., p. # 44-45)

## 2. THE DDC'S RECORDS CLEARLY SET FORTH THAT PLAINTIFFS PERFORMED TRAFFIC CONTROL DUTIES

The NYC DDC Inspector's Report sets forth the classification of worker on each milling project, including (i) superintendents, (ii) foremen, (iii) operators, (iv) laborers and (v) flaggers. (Annexed as Exhibit "A" to the Ziskin Decl. See, e.g., DDC FOIL documents DDC-8, DDC-18, DDC 22, and DDC-27) (Rule 56.1, ¶ 35) The DDC Inspector's Reports categorized laborers and flaggers as separate and distinct classifications. (Annexed as Exhibit "A" to the Ziskin Decl. See, e.g., DDC FOIL documents DDC-8, DDC-18, DDC 22, DDC-27) The NYC DDC Inspector's Reports recorded that Carlo Lizza's "flagperson maintained traffic and assisted pedestrians cross safely." (Annexed as Exhibit "B" to the Ziskin Decl., DDC FOIL documents DDC-559, DDC-571, 581) (Rule 56.1, ¶ 38)

## 3. PLAINTIFFS DID NOT DIRECT THE MOVEMENT OF CONSTRUCTION EQUIPMENT IN, ON, AND OFF THE CONSTRUCTION SITE

The unrebutted testimony in this matter clearly shows that the flaggers never directed Carlo Lizza's construction equipment. (Lizza Decl. ¶ 6-8, The Transcript of Aly Lizza is annexed as Exhibit "H" to the Ziskin Decl., p. # 45-46) In this regard, Carlo Lizza's laborers, known as the "dump man" and the "milling foreman", were responsible for moving construction barrels to allow construction vehicles the ability to enter and exit the construction site. (Lizza Decl. ¶ 13-14, The Transcript of Aly Lizza is annexed as Exhibit "H" to the Ziskin Decl., p. # 45) Flaggers/ crossing guards did not perform such work. Further, the flaggers/ crossing guards did not work inside the construction zone, not even to sweep the site of debris. (Lizza Decl. ¶ 7-8, The Transcript of Aly Lizza is annexed as Exhibit "H" to the Ziskin Decl., p. # 46-47)

**B. WORKERS PERFORMING FLAGGING AND CROSSING GUARD DUTIES ARE NOT ELIGIBLE TO RECEIVE PREVAILING WAGE PAY**
**1. THE STATE AND CITY AGENCY INTERPRETATIONS**

Both the NYS Bureau of Public Work and the New York City Comptroller's Office have issued guidance with regard to whether or not an individual's work falls within the statutory requirement mandating the payment of prevailing wages. In this regard, the 2001 Memorandum from the NYC Comptroller's Bureau of Labor Law Chief makes clear that in addition to performing traffic control duties, for a flagger to be eligible for prevailing wage pay, such worker must be (i) **"utilized on the construction work site" and (ii) "directing the movement of construction equipment in, on, and off the site…"** (Emphasis added) These required activities are not written in the disjunctive and therefore the flagger must perform all of the above duties in order to be eligible for prevailing wage pay. In the instant matter, it is clear that the Court should find that the Defendants were not required to pay Plaintiffs the prevailing wage absent evidence that the Plaintiffs actually worked on (or inside) the construction site and directed the movement of construction equipment. A finding to the contrary could also disturb

the Bureau of Labor Law's longstanding interpretation that the prevailing wage law does not apply to (i) drivers delivering material and supplies, including concrete and asphalt, to construction job sites and (ii) supervision.

Finally, Section 6.52 and 6.52 CG of the relevant NYC DOT Standard Highway Specifications and the DDC Addenda to Contract No. HW2CR15C2 sets forth that flagpersons and/or crossing guards used to direct vehicular and pedestrian traffic where construction operations make traffic control necessary are exempt from the prevailing wage unless such worker is assigned the task of directing construction equipment and/or performing any laborers' work.

## 2.   **THE NYC COMPTROLLER INTERPRETATION IS ENTITLED TO DEFERENCE BECAUSE THE COMPTROLLER IS VESTED WITH THE AUTHORITY TO MAKE SUCH DETERMINATION.**

The determination that a particular undertaking should fall within a particular job classification is a matter within the expertise of the Bureau of Labor of both the New York City Comptroller and the New York State Department of Labor (see, Matter of Nelson's Lamp Lighters v Roberts, 136 AD2d 810; Labor Law § 220.) The New York State Appellate Division has held that the "trade or occupation" classifications for work embraced by Labor Law § 220 are a matter given to the expertise of the Department (see, Matter of Nelson's Lamp Lighters v Roberts, 136 AD2d 810, 811, lv denied 73 NY2d 702; see also, Matter of Tenalp Constr. Corp. v Roberts, 141 AD2d 81, 85) and courts are strongly disinclined to disturb them, absent a clear showing that a classification does not reflect "the nature of the work actually performed" (Matter of Kelly v Beame, 15 NY2d 103, 109). (see, GE v. N.Y. State Dep't of Labor, 154 A.D.2d 117, 551 N.Y.S.2d 966.)

In the instant matter, the NYC Comptroller did not include the term flagperson and/or crossing guard within any classification, including the "paving and roadbuilding" laborer

24

classification and therefore did not post a prevailing wage rate of pay for such duties. Furthermore, the Comptroller has determined that for the flagger to be eligible for prevailing wage pay such individual <u>must work on the construction site and direct the movement of construction equipment</u>. There is no evidence that Plaintiffs did so.  In instances where the individuals do <u>not</u> perform such duties they are ineligible for prevailing wage pay.

### III.      <u>CONCLUSION</u>

Based upon the foregoing, there is more than sufficient evidence to establish as a matter of law that Plaintiffs did not perform the job duties of a "laborer".  Thus, Plaintiffs are <u>not</u> entitled to receive the prevailing wage rate for hours that they worked in connection with Carlo Lizza's asphalt milling projects in New York City. Accordingly, for the reasons set forth above, Defendants respectfully request that the Court find that Plaintiffs are <u>not</u> entitled to recover prevailing  wage damages when their job duties fell within the classification of a flagger or crossing guard since their activities did not include directing construction equipment and/or laborers' tasks.

Dated: Commack, New York
      December 5, 2016

                             The Ziskin Law Firm, LLP

                        By:   *Richard B. Ziskin*
                             Richard B. Ziskin
                             6268 Jericho Turnpike, Suite 12A
                             Commack, NY 11725
                             Telephone: (631) 462-1417

                             Attorneys for Defendants Carlo Lizza & Sons Paving, Inc., Ships Point Industries, Ltd. and Elia Aly Lizza