USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/6/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                  :

DONALD LITTLE and TERRENCE JOHNSON,       :
*Individually and on Behalf of All Others Similarly*   :
*Situated*,                        :

                       Plaintiffs,    :

            -v-                  :

CARLO LIZZA & SONS PAVING, INC., SHIPS POINT  :
INDUSTRIES LTD., A&B CONTRACTORS LLC, and   :
ELIA ALY LIZZA,                   :

                       Defendants.  :
-------------------------------------------------------------------X

15 Civ. 7423 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Named plaintiffs Donald Little and Terrence Johnson, as well as 12 opt-in plaintiffs,

allege that defendants—three companies and one individual in the paving business that employed

plaintiffs as "flagmen" on public works projects in New York City—did not pay them (1)

overtime wages required by federal and state labor law and (2) prevailing wages[1] required by a

contract of which plaintiffs were third-party beneficiaries. Plaintiffs now move for partial

summary judgment. They seek a declaration from the Court that the duties they performed for

defendants entitled them to the prevailing wage rate under New York law. Opposing this

motion, defendants argue that, as to those duties which plaintiffs undisputedly performed, they

were not entitled to the prevailing wage rate. Rather, defendants argue, the duties that plaintiffs

undisputedly performed would instead classify them as "traffic control flaggers," entitled to the

---

[1] Prevailing wages are the wages that prevail in a locality for a day's work in a particular trade or
occupation. *See* N.Y. Lab. Law § 220(3)(a).

minimum wage rate but not the prevailing wage rate. For the reasons that follow, the Court denies plaintiffs' motion for partial summary judgment.

## I.   Background[2]

### A.   The Parties

Defendant Carlo Lizza & Sons Paving, Inc. ("Carlo Lizza Paving") is in the heavy road and asphalt milling business; its recent work has mostly been on New York City ("NYC") roadways. *See* JSUF ¶¶ 1–2. Defendant Elia Aly Lizza is the CEO and sole owner of both Carlo Lizza Paving and an affiliated entity, defendant Ships Point Industries Ltd. ("Ships Point"), to which Carlo Lizza Paving, in or around summer 2015, transferred its employees and operations. JSUF ¶ 6; Compl. ¶ 34.

Defendant A&B Contractors LLC ("A&B") is in the construction contracting business. Beginning in around 2013, A&B provided employees to Carlo Lizza Paving in connection with Carlo Lizza Paving's work on asphalt milling contracts in New York City. JSUF ¶¶ 11–12; Compl. ¶ 35.

Since 2011, plaintiffs Little and Johnson have been employed by Carlo Lizza Paving, either directly or through A&B. Each has worked as a flagman (or a "flagger") on road projects in New York City, including pursuant to the contracts with the New York City Department of Transportation ("DOT") at issue in this case. JSUF ¶¶ 44–47, 60.

### B.   The DOT Contracts

Carlo Lizza Paving regularly enters into contracts with DOT ("DOT Contracts" or "the Contracts"), as a general contractor, to perform asphalt milling projects on New York City

---

[2] This account is drawn from the parties' Joint Stipulation of Undisputed Facts, Dkt. 104 ("JSUF"), and from deposition testimony ("Dep. Tr."). The Court also cites, solely to provide non-dispositive background, facts alleged in plaintiffs' Complaint, Dkt. 1 ("Compl.").

roadways, which entail the grinding of the first two inches of pavement to correct issues like potholes, cracks, and bumps on the roadways. JSUF ¶¶ 14, 28–30. Carlo Lizza Pavings's laborers, engineers, and drivers perform milling and sweeping pursuant to these contracts. *Id.* ¶ 31. DOT instructs Carlo Lizza Paving which streets to mill and the order in which to mill them. *Id.* ¶ 32. To perform these contracts, Carlo Lizza Paving employs workers, hired either directly or through A&B. *Id.* ¶ 34. Relevant here, the Contracts at issue contained the following language:

> "New York State Labor Law: This Contract is subject to New York State Labor Law Section 220, which requires that construction workers on the site be paid prevailing wages and supplements. The Contractor is reminded that all wage provisions of this Contract will be enforced strictly and failure to comply will be considered when evaluating performance."

*Id.* ¶ 15.

## C. Plaintiffs' Work on the DOT Projects

Since 2011, Carlo Lizza Paving has employed workers identified as "crossing guards" or "flaggers" (hereinafter, "flaggers") to work pursuant to DOT asphalt milling Contracts. *Id.* ¶ 46. For each asphalt milling contract, Carlo Lizza Paving employs between five and 10 such flaggers. Plaintiffs, including named plaintiffs Little and Johnson, served in this role. *Id.* ¶ 47. Little worked as a flagger for Carlo Lizza Paving from in or around May 2012 through in or around May 2014, and for A&B as a subcontractor Carlo Lizza Paving from in or around March 2015 through in or around August 7, 2015. *Id.* ¶¶ 51, 53–55. Johnson worked as a flagger for Carlo Lizza Paving from in or around March 2011 through in or around the spring of 2013. *Id.* ¶ 52. The 12 opt-in plaintiffs also worked as flaggers on DOT Contracts at times during the past six years. *Id.* ¶ 56. Carlo Lizza and A&B, in tracking employee time, listed certain employees—apparently including all plaintiffs—as "flaggers." *Id.* ¶ 57.

It is undisputed that each plaintiff's duties as a flagger entailed "directing foot traffic and vehicle traffic away from the asphalt milling job site." JSUF ¶ 48. This work sometimes also involved "using stop and go paddles." *Id.*

Plaintiffs allege—although this is disputed—that their duties also at times included other tasks. For example, plaintiffs attest that their duties also included "sweeping and shoveling dirt from both the milling area and the sidewalks," Dkt. 115 at 8 (citing Little Depo. Tr. 13, 65–66), "placing roadblocks and barrels," *id.* (citing Little Depo. Tr. 56, 60; Johnson Depo. Tr. 7), "directing pedestrians from inside the construction zone marked by the barrels," *id.* (citing Little Depo. Tr. 61–62; Johnson Depo. Tr. 31–32), "ensuring that machines could safely pass through the barricades," *id.* (citing Johnson Depo. Tr. 8, 31, 33), "placing and removing no parking signs from the construction area," *id.* (citing Johnson Depo. Tr. 22, 30), and "laying asphalt if the job was running behind schedule," *id.* (citing Johnson Depo. Tr. 34).

### D. Carlo Lizza Paving's Payment of Flaggers

Up until 2013, Carlo Lizza Paving paid the workers—including plaintiffs—whom it identified as "flaggers" or "crossing guards" "at what Carlo Lizza Paving believed was the required prevailing wage rate." JSUF ¶ 49. After 2013, after 2013, Carlo Lizza Paving, concluding that it was not required to pay such workers the prevailing wage, paid plaintiffs less than the prevailing wage rate, although their duties remained the same. *Id.* ¶ 50.

### E. Procedural History

On September 18, 2015, Little and Johnson filed the Complaint. Dkt. 1. It brings six causes of action: (1) unpaid overtime under the FLSA; (2) unpaid overtime under the New York Labor Law ("NYLL"); (3) breach of contract for failure to pay prevailing wages and supplemental benefits; (4) unjust enrichment and *quantum meruit* (pled in the alternative); (5) wage notice violations under the NYLL; and (6) wage statement violations under the NYLL. *See*

Compl. ¶¶ 74–104. Relevant here, as to the prevailing wage claims, plaintiffs allege that they were third-party beneficiaries of, and entitled to be paid prevailing wages under, the DOT Contracts. *Id.* ¶¶ 41–43.

On November 18, 2015, defendants Carlo Lizza Paving, Ships Point, and Lizza moved to dismiss plaintiffs' contract and quasi-contract claims.[3] Dkt. 25. On November 30, 2015, plaintiffs moved to conditionally certify an FLSA collective action. Dkt. 30. On February 5, 2016, the Court issued a decision, granting the motion for conditional certification of an FLSA collective action, and denying the motion to dismiss. Dkt. 48.

On November 14, 2016, plaintiffs moved for partial summary judgment, Dkt. 106, limited to the issue of whether plaintiffs are entitled to prevailing wages for their work on the DOT public milling projects. In support, they filed a declaration, Dkt. 107, and a memorandum of law, Dkt. 108 ("Pl. Br."). On December 5, 2016, defendants filed a memorandum of law, Dkt. 112 ("Def. Br."), and three declarations, Dkts. 110–11, 113, in opposition. On December 12, 2016, plaintiffs filed a reply memorandum, Dkt. 115 ("Pl. Rep. Br."), and affidavit, Dkt. 116, in support of their motion.

## II.     Applicable Legal Standards

### A.     Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[3] On December 23, 2015, A&B first appeared in this case, and filed an answer. Dkt. 41.

When the movant has properly supported its motion with evidentiary materials, the

opposing party must establish a genuine issue of fact by "citing to particular parts of materials in

the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir.

2009). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a

verdict for the non-moving party. *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d

Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the

facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir.

2010) (internal quotation marks and citation omitted). "Only disputes over facts that might

affect the outcome of the suit under the governing law" will preclude a grant of summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether

there are genuine issues of material fact, the Court is "required to resolve all ambiguities and

draw all permissible factual inferences in favor of the party against whom summary judgment is

sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336

F.3d 128, 137 (2d Cir. 2003)).

    **B.**    **New York's Prevailing Wage Rate Law**

        **1.**    **Labor Law § 220**

"It is well settled that the primary purpose and intent of the prevailing wage law (New

York Labor Law § 220) is to protect workers by ensuring that they have an effective remedy to

secure the prevailing wage." *Williamson Roofing & Sheet Metal Co. v Town of Parish*, 139 A.D.

2d 97, 103 (N.Y. App. Div. 4th Dep't. 1988). Under Labor Law § 220, the "prevailing rate of

wage" is that rate which is paid under collective bargaining agreements to at least 30% of those

employed in the "same trade or occupation" in a given locality. Labor Law § 220(5)(a).

To establish a plaintiff's entitlement to the prevailing wage, it is, however, not sufficient

to note that he or she worked on the same overall project, *e.g.*, a construction project, as workers

paid the prevailing wage. Instead, as the New York courts have long recognized, "individuals, although in the same generic employment, may not be in the same 'trade or occupation'" for the purpose of eligibility for the prevailing wage rate, and therefore, "[t]he pivotal question is the nature of the work actually performed" by the workers in question. *Kelly v. Beame*, 15 N.Y.2d 103, 109 (N.Y. 1965).

Usually, the determination regarding whether the nature of a particular employee's work brings it within a job description covered by § 220 is made, prospectively, by a "fiscal officer" of the state Department of Labor. *See* Labor Law § 220(5)(e); *Nelson's Lamp Lighters, Inc. v. Roberts*, 136 A.D.2d 810, 811 (N.Y. App. Div. 3d Dep't 1988) ("Whether a particular undertaking constitutes electrician's work is a matter within the expertise of respondent's agency."). But, where a city has a population in excess of one million, the Comptroller of such city acts as the fiscal officer. *See, e.g.*, *Tenalp Const. Corp. v. Roberts*, 141 A.D.2d 81 (N.Y. App. Div. 3d Dep't 1988). Under Labor Law § 220(3)(c), the fiscal officer has the duty "to ascertain and determine the schedules of supplements to be provided and wages to be paid workers, laborers and mechanics on such public work, prior to the time of the advertisement for bids, and such schedules shall be annexed to and form a part of the specifications for the work. Such fiscal officer shall file with the department having jurisdiction such schedules prior to the time of the commencement of the advertisement for bids on all public works proposed to be constructed." Consequently, effective July 1st of each year, the New York City Comptroller's Office ("the Comptroller" or "the New York City Comptroller") issues, with prospective effect, an annual prevailing wage schedule.

The subcategory relevant here of the annual prevailing wage schedule is for the category entitled "Paver & Roadbuilder—Laborer." The work performed by such persons is defined as:

"Paving and road construction work, regardless of material used, including but not limited to preparation of job sites, removal of old surfaces, asphalt and/or concrete, by whatever method, including but not limited to milling; laying of concrete; laying of asphalt for temporary, patchwork, and utility paving (but not production paving); site preparation and incidental work before the installation of rubberized materials and similar surfaces; installation and repair of temporary construction fencing; slurry seal coating, maintenance of safety surfaces; play equipment installation, and other related work."

Dkt. 112, Ex. D (Office of The Comptroller, City of New York, §220 Prevailing Wage Schedule)

(the "Prevailing Wage Schedule").

2.      **The Comptroller's Determinations Regarding "Flag Persons"**

The Bureau of Labor Law within the Office of the New York City Comptroller has issued two opinion letters regarding flaggers.

In 1998, the Comptroller issued an opinion letter to the Director of the Mayor's Office of Construction regarding the classification of a "uniformed full-time flag person." That letter stated, in pertinent part:

"When the worker assigned to those duties is not on a construction work site, and is being utilized to alleviate vehicular congestion by directing the flow of street traffic away from the vicinity of the construction site, that worker is performing traffic control duty. Accordingly, the worker does not fall within the purview of Labor Labor Section 220. However, when a worker is utilized adjacent to, or in close proximity to the construction work site, protecting the public from the inherent dangers on and about that site, safeguarding the work crew from street traffic, directing public traffic away from the site, and directing the movement of construction equipment in, on, and off the site, that worker is performing flagging duties which fall within the job specifications of the construction laborer."

(May 21, 1998 letter from Bureau of Labor Law to Director Mayor's Office of Construction)

(Rule 56.1, ¶ 67) (the "1998 Memo").

In 2001, the same bureau within the Comptroller's Office issued a second memorandum on the subject to the Director of the Mayor's Office of Construction. It stated in pertinent part:

"This memo is being issued for purposes of clarification. When a worker is assigned as a full-time 'flag person' and his/her duties are not primarily on a construction work site, but such person is primarily assigned to alleviate vehicular

congestion by directing the flow of the street traffic away from the vicinity of the construction site, the worker is performing traffic control duty. Accordingly the worker does not fall within the purview of Labor Law Section 220 . . . However, when a worker is utilized on the construction work site, protecting the public from the inherent dangers on and about that site, safeguarding the work crew from the street traffic, and directing the movement of construction equipment in, on, and off the site, that worker is performing flagging duties which fall within the job description of laborer . . ."

(Comptroller's Prevailing Wage Memorandum, March 13, 2001) (Rule 56.1, ¶ 66) (the "2001 Memo").

### III. Discussion

Plaintiffs' motion for partial summary judgment raises only one issue: whether plaintiffs were entitled, as a matter of law, to be paid the New York prevailing wage by virtue of working as "flaggers" for defendants on the DOT asphalt milling projects. For the reasons that follow, the answer to that question is no. Plaintiffs have not established that the inherent duties of that job qualified them as "laborers" under New York Labor Law § 220, so as to entitle them the prevailing wage rate.

At the outset, weight is properly afforded to the New York City Comptroller's memos regarding how to treat the work of "flaggers" under Labor Law § 220. As noted, a determination whether a particular job falls within a job description covered by § 220 is usually made by a "fiscal officer" of the state Department of Labor, and in large cities, such as New York City, by the city Comptroller. *See Tenalp Const. Corp.* 141 A.D.2d at 81 ("The Commissioner of Labor properly required a contractor on a public work project to pay an employee who was performing both supervisory and nonsupervisory duties the prevailing wage rate under Labor Law § 220"); *Gen. Elec. Co. v. N.Y. State Dep't of Labor*, 154 A.D.2d 117, 120, 551 N.Y.S.2d 966, 968, *aff'd*, 76 N.Y.2d 946, 565 N.E.2d 513 (1990) ("In our view, "trade or occupation" classifications for work embraced by Labor Law § 220 are a matter given to the expertise of the Department.").

9

Here, the Comptroller has issued two memos thoughtfully addressing the classification of "flaggers." These memos identify two separate types of work that "flaggers" may perform, and the category into which the flagger's work falls affects whether he or she is entitled to the prevailing wage rate under Labor Law § 220. First, there are flaggers who undertake "traffic control duty." As defined by the Comptroller, this work is "not on a construction work site, and is being utilized to alleviate vehicular congestion by directing the flow of street traffic away from the vicinity of the construction site." *See* 1998 Memo. The Comptroller has opined, since 1998, that such full-time flaggers are not entitled to the prevailing wage rate. *Id.* Separately, there are flaggers who performing safety related functions aimed at protecting the public and safeguarding the work crew. As defined by the Comptroller, the work of these persons is "utilized adjacent to, or in close proximity to the construction work site, protecting the public from the inherent dangers on and about that site, safeguarding the work crew from street traffic, directing public traffic away from the site, and directing the movement of construction equipment in, on, and off the site." *Id.* The Comptroller opined in his 2001 clarifying memo that the duties of these flaggers does, in fact, "fall within the job description of laborer." *See* 2001 Memo. Such "safety flaggers" thus are within the purview of § 220, and are entitled to the prevailing wage rate. *Id.*

There is no basis for the Court to second-guess the Comptroller's longstanding guidance on this issue. It predates by more than a decade the work at issue by plaintiffs here. Plaintiffs do not point to any contrary guidance. And the Comptroller's is a sound, indeed a convincing, application of the "same trade or occupation" test under Labor Law § 220. It sensibly distinguishes between, on the one hand, traffic control functions that are carried out away from the vicinity of the work site, and on the other hand, safety-related functions that are carried out on, adjacent to, or in close proximity to the work site, and that include directing the movement of

10

construction equipment. The Comptroller reasonably treated this second category of flaggers, but not the first, as performing duties which fall within the job description on the prevailing wage schedule of "Paver & Roadbuilder—Laborer."

The Court will thus follow and adopt the guidance of the Comptroller on this point. It therefore follows that for a full-time flagger to fall under the "laborer" classification in the prevailing wage rate schedule, the flagger's job must entail more than ordinary "traffic control" duties (*i.e.*, "alleviating vehicular congestion by directing the flow of the street traffic away from the vicinity of the construction site"). The prevailing wage rate schedule and the memoranda by the Comptroller's Office instead require a flagger, in order to be entitled to prevailing wages under § 220, to have flagging duties akin to those of "safety flaggers" as described above, or, alternatively, to have "paver and roadbuilder—laborer" duties along the lines of those set forth in the prevailing wage schedule (*e.g.*, milling, laying of concrete, laying of asphalt for temporary, patchwork, and utility paving).

This holding requires denial of plaintiffs' motion for summary judgment. That is because the only aspect of plaintiffs' job duties that appears undisputed is that these duties included the duties of a "traffic control" flagger, which would not, on their own, entitle plaintiffs to the prevailing wage rate. Whether—and, if so, to what extent—the two named and the 12 opt-in plaintiffs had additional duties—such as those of a "safety flagger" or of a "paver and roadbuilder—laborer" as set forth in the prevailing wage schedule—however, is very much in dispute.[4] And the answer potentially may differ plaintiff by plaintiff. The parties have not

---

[4] *See* discussion *supra*, at 4; *compare* Pl. Rep. Br. at 4 (arguing that flaggers may qualify as other than a "traffic control" flagger even if they "do not satisfy every word [of the definition of "laborer" or "safety flagger"]" and *id.* at 8 (noting evidence that plaintiffs performed duties such as "sweeping and shoveling dirt from both the milling area and the sidewalks, placing roadblocks and barrels, directing pedestrians from inside the construction zone marked by the barrels,

marshaled the evidence, for each plaintiff, as to this issue.  Nor have they briefed how, under §

220, to treat a worker whose duties straddled these categories (*e.g.*, a flagger with traffic control

duties who also performed some safety flagging or milling work).

The Court's ruling today, holding that "traffic control" flaggers are not as such entitled to

prevailing wages, may supply the parties with sufficient guidance as to facilitate meaningful

settlement discussions.  The Court directs counsel to meet and confer within one week of this

decision with the goal of discussing potential resolution of this case.

In the event, however, that the litigation is to move forward, the Court would welcome

the parties' guidance as to next steps, including whether a new round of summary judgment

motions, perhaps focusing on the evidence specific to individual plaintiffs, is warranted, and

what the standards for finding liability at trial would be for plaintiff flaggers found to have had

dichotomous responsibilities (*e.g.*, some involving traffic control and some involving safety

functions).  In the event the case is not resolved, the Court directs counsel to meet and confer

about the future direction of this case, and, by June 30, 2017, to submit a joint letter, setting forth

their respective views as to next steps.

---

ensuring that machines could safely pass through the barricades, placing and removing no
parking signs from the construction area, and even laying asphalt if the job was running behind
schedule") *with* Def. Br. at 21–22 (disputing that plaintiffs performed "paving and roadbuilding
laborers' work" as set forth in the prevailing wage schedule" and stating that evidence shows that
plaintiffs' duties were  traffic-control duties such as "maintaining and securing the perimeter of
the asphalt milling work sites"); *id.* at 23 (representing that evidence shows that other laborers at
Carlo Lizza Paving, known as the "dump man" and the "milling foreman," were responsible for
moving construction barrels to allow construction vehicles the ability to enter and exit the
construction site, and that the there is no evidence that the plaintiff flaggers ever "directed Carlo
Lizza's construction equipment").

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment is denied.

The parties are directed to meet and confer, and to submit to the Court in writing by **June 30, 2017**, a joint letter, setting out their views as next steps in this case.

The Clerk of Court is respectfully directed to close the motion pending at docket 106.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 6, 2017
      New York, New York